No. 49,595

RILEY COUNTY EDUCATION ASSOCIATION, *Appellee* and *Cross-Appellant,* v. UNIFIED SCHOOL DISTRICT NO. 378, Riley County, Kansas, *Appellant* and *Cross-Appellee.*

(592 P.2d 87)

Opinion filed February 24, 1979.

*Fred W. Rausch, Jr.,* of Topeka, argued the cause and was on the brief for the appellant and cross-appellee.

*Randall J. Forbes,* of Crane, Martin, Claussen, Hamilton & Barry, of Topeka, argued the cause and was on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

McFARLAND, J.: This case concerns a dispute between the Riley County Education Association (hereinafter referred to as Association) and the Board of Education of Unified School District No. 378 (hereinafter referred to as Board) over the teachers' contracts for the 1977-78 school year. The trial court held partially in favor of the Board and partially in favor of the Association. The Board has appealed from the determinations adverse to it and the Association has cross-appealed from the determination adverse to it.

Much of the factual and procedural situation is irrelevant to the issues before us. For clarity and simplification the facts will be streamlined as much as possible. The Association is the professional employees' organization duly authorized to collectively negotiate with the Board on behalf of the teachers of U.S.D. No. 378. The parties collectively negotiated an agreement for the 1976-77 school year. On December 1, 1976, pursuant to K.S.A. 72-5423, the parties exchanged notices of the items desired to be negotiated for the 1977-78 school year. In all, there were fifteen such items. Neither party included articles 1, 2, 3, 15, 16, 17 and 18 of the then existing agreement on their notices. The parties reached tentative agreement (subject to ratification) on all of the noticed items except for salary. On or about June 21, 1977, negotiations terminated and the Board made its final salary offer. Initially, the negotiating team for the Association did not accept the salary offer. Upon reflection they submitted to the teachers the fourteen items on which tentative agreement had been reached, the Board's final salary offer, and the unnegotiated articles of the 1976-77 contract, with recommendation for ratification. The majority of the teachers voted on June 24, 1977, to accept the package, which consisted of the three above-mentioned parts. By letter of June 27, 1977, the Association advised the Board of this action. The Board refused to ratify the package on the basis that the seven articles from the 1976-77 agreement (still in effect but due to expire July 1, 1977) were not properly included within the package submitted for ratification. On June 30, 1977, the Board issued unilateral contracts containing the fourteen items on which tentative agreement had been reached, the Board's final salary offer, a new item requiring the payment of $500.00 by any teacher as a condition for release from his or her contractual obligations, and a provision that acceptance of the contracts was conditioned upon the teacher signing his or her supplemental contract of employment. Supplemental contracts were actually involved in relatively few teachers' contracts and required the performance of additional duties for additional compensation. The teachers were given until July 11, 1977, to sign and return the unilateral contracts.

On July 6, 1977, the Association commenced this action. On the same date the trial court restrained the Board from enforcing the July 11, 1977, contract return date and "from fixing terms and

conditions of teacher employment for the 1977-78 school year." The petition commencing the action was entitled "Petition for Declaration of Prohibited Practice and Injunction." The trial court treated it (without objection) as an action for declaratory judgment, which, under the circumstances, was quite appropriate. The matter was heard on July 19, 1977, on the Board's motion to dismiss.

During the hearing the parties stipulated as to the salary schedule to be included in the 1977-78 contracts. The trial court took the matter under advisement and issued its "Memorandum Opinion and Order" on August 26, 1977. The portion of the trial court's decision relative to issues on appeal is summarized as follows:

1. That provisions of a negotiated agreement between teachers and a school district which are not noticed for negotiations pursuant to K.S.A. 72-5423 and not negotiated, continue in effect during the ensuing contract year unless the items which are negotiated and ratified clearly modify or amend a specific unnoticed provision.

2. That placement, in the employment contracts offered teachers, of an amended provision dealing with liquidated damages to be paid if a teacher is released from a contractual obligation, without the provision having been noticed for negotiation pursuant to K.S.A. 72-5423, is repugnant to K.S.A. 72-5423.

3. That a Board of Education may condition a teacher's employment contract upon the teacher's acceptance of the Supplemental Contract of Employment offered.

4. That the Court's other rulings render the issue of good faith negotiations moot.

On appeal, the Board challenges conclusions numbers 1 and 2 and the Association challenges conclusion number 3.

Initially, we will dispose of one small point on appeal. The Board contends certain findings of fact made by the trial court were erroneous. The trial court made its determination on documentary evidence and the stipulations, briefs, and arguments of counsel. No witnesses testified. In such situation this court on appellate review has as good an opportunity to examine and consider the evidence as did the court below, and to determine de novo what the facts establish. *Crestview Bowl, Inc. v. Womer*

*Constr. Co.*, 225 Kan. 335, 592 P.2d 74 (1979). The facts, accordingly, are those found in this opinion.

Before proceeding further, it should be noted that negotiations herein ceased prior to the time the School Impasse Legislation (K.S.A. 1978 Supp. 72-5426 *et seq.*) went into effect, and such legislation is not involved in this dispute.

The first substantial issue before us is the propriety of the trial court's conclusion (summarized): That provisions of a negotiated agreement between teachers and a school district which are not noticed for negotiations pursuant to K.S.A. 72-5423 and not negotiated, continue in effect during the ensuing contract year unless the items which are negotiated and ratified clearly modify or amend a specific unnoticed provision.

The Board contends that, as far as teachers herein are concerned, the Continuing Contract Law is K.S.A. 1976 Supp. 72-5437 of the Teachers' Due Process Act (K.S.A. 1976 Supp. 72-5436 *et seq.*), which statute has superseded the old Continuing Contract Law (K.S.A. 72-5411). The Board further contends a teacher's right to proceed under the Continuing Contract Law is an "individual" rather than a "collective" right.

Both of these contentions have been determined adversely to The Board in *NEA-Wichita v. U.S.D. No. 259*, 225 Kan. 395, 592 P.2d 80 (1979).

In *NEA-Wichita*, we further held that "[a]bsent a collectively negotiated agreement properly ratified, the individual teacher has the option of accepting the unilateral contract offered by the board of education or of proceeding under the Continuing Contract Law." Syl. ¶ 3.

There was no negotiated agreement properly ratified for the 1977-78 school year. By virtue of this fact and our holdings in *NEA-Wichita* the issue herein becomes: When collective negotiations terminate unsuccessfully, and a teacher rejects the Board's unilateral contract and elects to proceed under the Continuing Contract Law, are the terms and provisions of the previous year's negotiated agreement a part of his or her continuing contract?

The Board argues the negotiated agreement expired on June 30, 1977, by its express language. The negotiated agreement was not specifically made a part of each teacher's individual contract. K.S.A. 72-5423(*c*) (now 1978 Supp. 72-5423[*d*]) provides:

"Any agreement lawfully made under the provisions of this act may be adopted

by reference and made a part of the employment contract between any professional employee of the applicable negotiating unit and a board of education for a period of not to exceed two years."

The Board then concludes the teachers can only rely on their individual contracts in proceeding under the Continuing Contract Law. To buttress this contention the Board points out that individual teachers sign only their individual contracts and do not sign the negotiated agreement.

It is the position of the Association that it and its negotiating team are only agents for the individual teachers. It further argues that whether or not the negotiated agreement is specifically included by reference in the individual contracts, pursuant to K.S.A. 72-5423(c), the teacher's contract of employment must of necessity include both his or her individual contract and· the negotiated agreement for purposes of the Continuing Contract Law.

The Collective Negotiations Law contains the following definitions in K.S.A. 1976 Supp. 72-5413:

"(e) 'Professional employees' organizations' means any one or more organizations, agencies, committees, councils or groups of any kind in which professional employees participate, and which exist for the purpose, in whole or part, of meeting, conferring, consulting and discussing with boards of education with respect to the terms and conditions of professional service.

. . . .

"(g) 'Professional negotiation' means meeting, conferring, consulting and discussing in a good faith effort by both parties to reach agreement with respect to the terms and conditions of professional service."

The professional employees' association herein was acting as the agent of the individual teachers in negotiations. The individual contracts for the 1976-77 school year arose directly out of, and were a result of, the negotiated agreement. While the negotiations were proceeding for that year the Board could not have unilaterally issued contracts. K.S.A. 72-5423(a).

It is the duty of this court, so far as practicable, to reconcile the different statutory provisions so as to make them consistent, harmonious, and sensible. *Garden City Educators' Ass'n v. Vance*, 224 Kan. 732, 585 P.2d 1057 (1978).

In general contract law it is well settled that where two or more instruments are executed by the same parties contemporaneously or at different times in the course of the same transaction, and concern the same subject matter, they will be read and construed

together so far as determining the respective interests of the parties, although they do not in terms refer to each other. *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.,* 189 Kan. 125, 134, 368 P.2d 19 (1962); 17A C.J.S., Contracts § 298.

The negotiations authorized by the Collective Negotiations Law are to be a good faith effort *"to reach agreement with respect to the terms and conditions of professional service."* It would be unreasonable to conclude that such a negotiated agreement is not a part of the teacher's "contract of employment" under the Continuing Contract Law unless it is expressly included as a part of the teacher's individual contract. We therefore conclude the teachers' "contracts of employment" referred to in the Continuing Contract Law include both the teachers' individual contracts and the negotiated agreement, regardless of whether the negotiated agreement was expressly made a part of the individual contracts as authorized by K.S.A. 72-5423(*c*).

Before proceeding to the next issue some additional comment is necessary. The trial court decided this issue on the basis that the unnoticed items were subject to the Continuing Contract Law because they were unnoticed for renegotiation by December 1, 1976, in accordance with K.S.A. 72-5423(*a*), which states in relevant part as follows:

"[B]oards of education are required to comply with this act in recognizing professional employees' organizations, and when such an organization is recognized, the board of education and the professional employees' organization shall enter into professional negotiations prior to issuance of the annual teachers' contracts or renewal of the same on request of either party: *Provided,* That notices to negotiate on new items or to amend an existing contract must be filed on or before December 1 in any school year by either party, such notices to be in writing and delivered to the superintendent of schools or to the representative of the bargaining unit and containing in reasonable and understandable detail the purpose of the new or amended items desired."

Before the trial court and before this court the arguments were based on the distinction between noticed and unnoticed items. We have made no such distinction.

The next issue is whether the Board had the right to place an unnegotiated item in the unilateral contracts. The item so included was a requirement that if a teacher were to be released from his or her contract obligations, then he or she had to pay the sum of $500.00 as liquidated damages. Prior to the inclusion of this provision in the unilateral contract it had been the policy of

the Board to require a $200.00 payment from such teachers. The trial court held that the inclusion of the unnegotiated item was repugnant to K.S.A. 72-5423 (the statute requiring notice to negotiate new items or amendments to existing contracts by December 1). This issue is before us on the law as it was in June, 1977. The present law, K.S.A. 1978 Supp. 72-5428(f) (effective July 1, 1977), provides:

"After the report of the fact-finding board has been made public, if the board of education and the recognized professional employees' organization have not resolved the impasse and reached an agreement, *the board of education shall take such action as it deems in the public interest, including the interest of the professional employees involved,* and shall make such action public." Emphasis added.

Under this statute the Board would clearly have been empowered to include such a provision, but only after the impasse procedures had been fully utilized.

The Association argues the Collective Negotiations Law (as it existed in June, 1977) would be reduced to a nullity if boards of education were permitted to include unnegotiated new items in unilateral contracts. The Board argues that nothing in the law applicable at the time precludes their action in this regard.

This court held in *National Education Association v. Board of Education,* 212 Kan. 741, Syl. ¶¶ 1, 4, 512 P.2d 426 (1973) (Shawnee Mission):

"Under the professional negotiations act of 1970 representatives of teachers' organizations and of the board of education are required to negotiate on terms and conditions of professional service in a good faith effort by both parties to reach agreement.

"While neither the board nor the employees' organization is compelled to agree to any particular term or condition, their mutual goal in negotiating is to seek areas of accord with a view to entering into a binding agreement."

The trial court did not find bad faith on the part of the Board during negotiations, nor do we so find.

We have carefully reviewed the Collective Negotiations Law and find nothing therein that would preclude the Board from placing a new provision in the unilateral contract. As previously stated, professional negotiations are defined in K.S.A. 1976 Supp. 72-5413(g) as "meeting, conferring, consulting and discussing in a good faith effort by both parties to reach agreement with respect to the terms and conditions of professional service." We hold that after good faith professional negotiations, pursuant to the Col-

lective Negotiations Law applicable in June, 1977 (K.S.A. 1976 Supp. 72-5413 *et seq.*), terminated unsuccessfully, the Board could issue unilateral contracts for the next school year containing an item not noticed for negotiation pursuant to K.S.A. 72-5423.

We conclude the trial court erred in holding that the inclusion of the unnegotiated item was repugnant to K.S.A. 72-5423.

The final issue is whether the Board has the right to condition acceptance of a unilateral contract upon acceptance of a supplemental contract. Supplemental contracts were issued only to a limited number of teachers. K.S.A. 72-5412a provides:

"The board of education of any school district may enter into a supplemental contract of employment with any employee of the district. As used in this section 'supplemental contract' means a contract for services other than those services covered in the principal or primary contract of employment of such employee, and shall include but not be limited to such services as coaching, supervising, directing and assisting extra curricular activities, chaperoning, ticket taking, lunch room supervision and other similar and related activities. None of the provisions of article 54 of chapter 72 of Kansas Statutes Annotated, including the sections thereof in the 1971 cumulative pocket-part supplement, shall be applicable to any employee's supplemental contract."

K.S.A. 72-5412a removes supplemental contracts from both the Continuing Contract Law and the Collective Negotiations Law. *NEA—Wichita v. U.S.D. No. 259*, Syl. ¶ 5.

If those teachers who received supplemental contracts with their unilateral contracts rejected the "package," they were expressly granted the right by the Board to proceed under the Continuing Contract Law. So, at the very least, they would be teaching under the same terms as the preceding year with the exception that no supplemental contract would continue under the Continuing Contract Law.

We note there was no contention that the supplemental contracts were unreasonable in nature. We must therefore conclude the Board had the right to condition the acceptance of a unilateral contract upon the acceptance of a supplemental contract.

All issues raised have been carefully considered.

The judgment is affirmed in part and reversed in part.