No. 49,740

NATIONAL EDUCATION ASSOCIATION-WICHITA, *et al., Appellees,* v. THE BOARD OF EDUCATION, UNIFIED SCHOOL DISTRICT NO. 259, WICHITA, SEDGWICK COUNTY, KANSAS, *Appellant.*

(592 P.2d 80)

Opinion filed February 24, 1979.

*William H. Dye,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause and was on the brief for the appellant.

*Morris D. Birch,* of Nicklin and Birch, of Wichita, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

McFARLAND, J.: This is a declaratory judgment action to determine the terms of employment of certain teachers. The trial court ruled in favor of the teachers and the defendant school board appeals.

Plaintiff National Education Association-Wichita (hereinafter referred to as NEA-W) is the exclusive representative of all teachers employed by Unified School District No. 259. The defendant is the Board of Education of Unified School District No. 259 (hereinafter referred to as Board). In May, 1976, NEA-W and the Board negotiated and ratified a two-year contract for the 1976-78 school years. This contract (hereinafter referred to as the master contract) contained the following provision:

"The policy set forth herein shall be included by reference in the contracts of all certificated teachers employed by Unified School District 259 who are compensated for on the Teachers Salary Schedule or on the Health Services and Occupations Salary Schedule. This policy, entitled 'Teachers Employment Agreement,' shall be made a part of the instructor's individual comprehensive contract(s), with the same force and effect as though fully set therein; and it shall constitute Board policy for the period of August 1, 1976, through July 31, 1978; Provided, that upon notification by either party to the other party prior to December 1, 1976, Articles V, IX, X, and XX may be reopened, negotiated and changed for the period of August 1, 1977, through July 31, 1978, as per Kansas Statute; Provided, further that all Articles not included on either the Board's or the Association's list for negotiation submitted on or before December 1, 1977, for the successor contract, shall continue unchanged into the successor contract."

Negotiations were commenced on December 1, 1976, on all four of the articles listed as renegotiable. No agreement was reached on the renegotiated articles and negotiations ceased on May 11, 1977. The Board then issued unilateral individual contracts. Shortly thereafter, NEA-W filed an action in the Sedgwick County district court accusing the Board of acting in bad faith. On May 26, 1977, the court ruled in favor of the Board and the Board extended the time for return of the contracts. The May 1977 court decision is not involved in this appeal. Ultimately, the unilateral contracts were accepted by 2,891 teachers and rejected by 25 teachers. This declaratory judgment action was brought by NEA-W and its president, Barbara Young, to determine the rights of the 25 teachers who refused to execute the unilateral contracts. Barbara Young, herself, was one of the 25 teachers directly involved. The matter was submitted to the trial court on stipulations of fact and documentary evidence. The trial court held in favor of the teachers and the Board appeals.

Before proceeding further, it should be noted that negotiations herein ceased prior to the time the School Impasse Legislation (K.S.A. 1978 Supp. 72-5426 *et seq.*) went into effect and such legislation is not involved in this dispute.

The Board raises numerous points of error which overlap to such a degree that the issues must of necessity be considered in a different format than that presented by the briefs.

The Board challenges the determination of the trial court that the teachers can rely on both K.S.A. 72-5411 and K.S.A. 1976 Supp. 72-5437 as the Continuing Contract Law. To understand this issue one must look at the following statutes:

K.S.A. 72-5410(*a*):

"As used in this act: (*a*) 'Teacher' shall mean and include teachers, supervisors, principals, superintendents and any other professional employees who are required to hold a teacher's or school administrator's certificate in any public school."

K.S.A. 72-5411:

"All contracts of employment of teachers in the public schools in the state, shall continue in full force and effect during good behavior and efficient and competent service rendered by the teacher, and all such contracts of employment shall be deemed to continue for the next succeeding school year unless written notice of intention to terminate the contract be served by the governing body upon any such teacher on or before the fifteenth day of March or the teacher shall give written notice to the governing body of the school district on or before the fifteenth day of April that the teacher does not desire continuation of said contract. Terms of a contract may be changed at any time by mutual consent of both the teacher and the governing body of the school district."

K.S.A. 1976 Supp. 72-5436(*a*):

"As used in this act: (*a*) 'Teacher' shall mean any professional employee who is required to hold a teacher's certificate in any public school, and any teacher or instructor in any area vocational-technical school or community junior college, except that 'teacher' shall not include supervisors, principals, superintendents or any person employed under the authority of K.S.A. 1976 Supp. 72-8202b, or amendments thereto, or any person employed in an administrative capacity by any area vocational-technical school or community junior college."

K.S.A. 1976 Supp. 72-5437:

"All contracts of employment of teachers, as defined in K.S.A. 1976 Supp. 72-5436, and amendments thereto, except contracts entered into under the provisions of K.S.A. 72-5412a, shall be deemed to continue for the next succeeding school year unless written notice of termination or nonrenewal is served as hereinafter provided. Written notice to terminate a contract may be served by a

board upon any teacher prior to the time the contract has been completed, and written notice of intention to nonrenew a contract shall be served by a board upon any teacher on or before the fifteenth day of March. A teacher shall give written notice to the board on or before the fifteenth day of April if the teacher does not desire continuation of said contract. Terms of a contract may be changed at any time by mutual consent of both the teacher and the board."

The Board contends the Continuing Contract Law applicable to teachers is K.S.A. 1976 Supp. 72-5437. The rationale of this contention is that K.S.A. 1976 Supp. 72-5437 was enacted later than K.S.A. 72-5411 and is expressly limited to teachers by K.S.A. 1976 Supp. 72-5436(a). The Board then concludes the legislative intent was that K.S.A. 1976 Supp. 72-5437 is the Continuing Contract Law applicable to teachers and that K.S.A. 72-5411 is thereby restricted to nonteaching school personnel. K.S.A. 1976 Supp. 72-5437 is a part of a series of statutes (K.S.A. 1976 Supp. 72-5436 to 5446) constituting an act to assure that teachers who are notified their contracts are not renewed or who are terminated before the expiration of their contracts are afforded an opportunity for a hearing before a hearing committee with considerable powers to determine the facts and make findings of fact and recommendations to the board. The board has the final decision, but an aggrieved teacher may appeal to the district court. However, the right to the due process procedure (K.S.A. 1976 Supp. 72-5438 *et seq.*) is limited to teachers with at least two years' tenure, except where termination or nonrenewal is the result of alleged abridgment of a constitutional right (K.S.A. 1976 Supp. 72-5445). The foregoing is a greatly simplified summary of the act, but is given in order to put K.S.A. 1976 Supp. 72-5437 in context. We will refer to K.S.A. 1976 Supp. 72-5436 through 5446 as the Teachers' Due Process Act.

We must also look at K.S.A. 72-5412, which provides:

"All contracts shall be binding on both the teacher and board of education of the school district until the teacher has been legally discharged from his teaching position or until released by the board of education from his contract. Until such teacher has been discharged or released, he shall not have authority to enter into a contract with the board of education of any school district for any period of time covered in the original contract. If upon written complaint, signed by two-thirds (⅔) of the members of the board of education of the school district, any teacher *is* reported to have entered into a contract with another school or board of education without having been released from his former contract, or for other reasons fails to fulfill the provisions of such contract, such teacher, upon being found guilty of said charge at a hearing held before the state board of education, shall have his

certificate suspended for the remainder of the term for which said contract was made. Notwithstanding the foregoing provisions of this section, any contract of employment made by the board of education of any school district prior to the public hearing on the budget of such school district shall be voidable in case adequate funds are not available in such budget for the compensation provided for in such contracts."

If the Board is correct in its position, then presumably this statute would have no force and effect since it is a part of the Continuing Contract Law found in K.S.A. 72-5410 through 5412, and the sanctions could not be applied to teachers breaching their contracts.

In determining legislative intent it is significant to note that both K.S.A. 72-5411 and K.S.A. 1976 Supp. 72-5437 were amended in 1978 to change the dates of notices by the board from March 15 to April 15 and by teachers from April 15 to May 15, but otherwise were reenacted in their original form.

It is the duty of this court, so far as practicable, to reconcile different statutory provisions so as to make them consistent, harmonious and sensible. *Garden City Educators' Ass'n v. Vance,* 224 Kan. 732, 585 P.2d 1057 (1978). We must conclude that the legislature intended to leave the old Continuing Contract Law in full force and effect while granting teachers with more than two years' tenure, or who alleged termination for violation of their constitutional rights, additional protection by the enactment of the Teachers' Due Process Act. The Teachers' Due Process Act and the old Continuing Contract Law are not inconsistent or in disharmony with each other and are both now a part of the Continuing Contract Law applicable to teachers. The trial court did not err in so concluding.

The Board next takes issue with the determination of the trial court that the teachers had the option to decline the unilateral contract and to proceed under the Continuing Contract Law. Before proceeding further, certain terms need to be clarified and explained. The master contract refers to the two-year negotiated agreement between NEA-W and the Board. The master contract does not specifically fix the salary of any individual teacher. It does, however, set the salary schedule. The individual salary of a teacher is determined by where he or she fits on the schedule. Each teacher was issued an individual short form contract for the 1976-77 school year which set the salary for the particular teacher by indicating where that teacher properly belonged on the salary

schedule. This was done by indicating the appropriate "step" and "track." No specific salary figure was included in the teacher's individual contract. The term "unilateral contract" refers to the contract issued by the Board to the teachers after renegotiation of Articles V, IX, X, and XX concluded unsuccessfully.

It is the position of the Board that the Continuing Contract Law applies to teachers "individually" and not "collectively." The Board argues that "To avoid judicial repeal of either the Continuing Contract Law or the Collective Negotiations Law [K.S.A. 1976 Supp. 72-5413 to 5425], [the] continuing contract must only be applied to individual teachers outside of the collective negotiations arena." The Board further contends that "When the plaintiff [NEA-W] and defendant [Board] exchange proposals on or before December 1 of each year, that representational notice is sufficient to comply with continuing contract notice," and is notice of nonrenewal. By this reasoning, the Continuing Contract Law is inapplicable, once professional negotiations have been commenced.

We do not agree. The Collective Negotiations Law is not in disharmony or inconsistent with the Continuing Contract Law. The Collective Negotiations Law gives teachers the right to negotiate collectively. It does not take away any rights granted to teachers by the Continuing Contract Law with one exception. That exception is that an individual teacher is bound by a collectively negotiated agreement properly ratified, whether or not he or she individually agrees with it. Absent such a collectively negotiated agreement properly ratified, the individual teacher has the option of accepting the unilateral contract offered by the Board or proceeding under the Continuing Contract Law.

Although *Garden City*, 224 Kan. 732, dealt only with impasse legislation, not involved herein, the holding of the majority that collective negotiations may continue beyond the mandatory cut-off date of July 1, set in *National Education Association v. Board of Education* (commonly referred to as *Shawnee Mission*), 212 Kan. 741, 512 P.2d 426 (1973), serves only to reinforce this conclusion. Under *Garden City*, negotiations could continue far into the new school year. It would be contrary to the intent of the Collective Negotiations Law and the Continuing Contract Law if, upon unsuccessful termination of collective negotiations, teachers were forced to accept whatever unilateral contracts might be offered or else lose their jobs.

The next issue is whether the teachers proceeding under the Continuing Contract Law were entitled to move up on the salary scale of the master contract in accordance with the additional year of experience gained or attainment of additional education since its execution. The Board contends that teachers so electing are restricted to the exact salary paid the previous year. The Board argues that to hold otherwise lets the teachers pick the best of both worlds. The teachers argue that the individual teacher's contract sets the salary in accordance with the master contract and that increases in step and track are proper under the Continuing Contract Law.

The master contract was for the two-year period from August 1, 1976, to July 31, 1978, with express agreement that Articles V, IX, X and XX could be renegotiated for the second year on request of either the Board or NEA-W if such request was made by December 1, 1976. The salary schedule is included in Article V. If no request to reopen these articles had been made, then clearly all teachers would have the right to move up on track and step, where appropriate, the second year. The negotiations concluded unsuccessfully and unilateral individual contracts were issued. We cannot conclude that the 25 teachers electing to proceed under the Continuing Contract Law lost the right to move up on step or track solely because negotiation for change was attempted and failed.

We conclude the trial court correctly found that the 25 teachers proceeding under the Continuing Contract Law were entitled to move up on track and step where appropriate. This determination is specifically limited to the facts at hand wherein we are dealing with the second year of a two-year negotiated contract, and we do not determine what would be the result on this issue if we were construing the rights of the parties after the expiration of the negotiated agreement.

The next issue raised is whether supplemental contracts are subject to the Continuing Contract Law. This issue arises from the fact 17 of the 25 teachers electing to proceed under the Continuing Contract Law had supplemental contracts for the 1976-77 school year.

The Board contends the teachers lost their rights to the supplemental contracts by electing to proceed under the Continuing

Contract Law and, further, that the supplemental contracts were expressly limited to one year by the master contract.

K.S.A. 72-5412a provides:

"The board of education of any school district may enter into a supplemental contract of employment with any employee of the district. As used in this section 'supplemental contract' means a contract for services other than those services covered in the principal or primary contract of employment of such employee, and shall include but not be limited to such services as coaching, supervising, directing and assisting extra curricular activities, chaperoning, ticket taking, lunch room supervision and other similar and related activities. None of the provisions of article 54 of chapter 72 of Kansas Statutes Annotated, including the sections thereof in the 1971 cumulative pocket-part supplement, shall be applicable to any employee's supplemental contract."

The statute clearly removes supplemental contracts from all of Article 54, Chapter 72, of the Kansas Statutes. Accordingly, they are subject neither to the Continuing Contract Law nor to the Collective Negotiations Law.

This determines the matter except for those teachers who had supplemental contracts because they were teaching special education. It is undisputed that the special education supplemental contracts involved no duties that were in addition to the teachers' primary contracts. This salary supplementation was in accordance with the master contract and the policy of so doing had its origin in the need to attract state certified special education teachers to U.S.D. No. 259.

When the caption given a document is inconsistent with the contents thereof, the court must look through form to substance in determining the true nature of the document. A supplemental contract, to come within the provisions of K.S.A. 72-5412a, must be for additional duties over and above those required by the teacher's primary contract.

We have no hesitancy in determining that the document designated "supplemental contract" was not the type of supplemental contract contemplated by K.S.A. 72-5412a. The issuance of supplemental contracts to special education teachers was purely a device to supplement their salaries and not for the assignment of additional duties.

The fact the master contract limited all supplemental contracts to one year does not alter the result herein. The Board relies on Article V, Section E, paragraph 2 (a), which limits supplemental contracts to one year. This same section goes on to provide:

"An authorized Personnel Action Request form specifying salary shall be offered to the instructor prior to the time that the instructor begins to perform the responsibilities called for by the supplemental assignment. Supplemental contracts shall be issued as soon as possible after Board approval. Once an instructor has been assigned and has accepted such assignment, it shall be performed in a professional manner."

Clearly, this contract provision is intended to apply to supplemental contracts that were actually for additional duties.

The final issue on appeal relates to whether plaintiff Barbara Young was entitled to a full-time contract with half-time temporary leave. It had been the custom of the Board to grant full-time contracts, but half-time temporary leaves, to presidents of plaintiff NEA-W. The presidents were paid on a half-time basis. In the 1976-77 school year, prior to her election as the new president of NEA-W, Ms. Young had a full-time contract and taught full time. She contends, and the Board does not deny, that she requested half-time leave and that this request was granted on June 20, 1977. No request for full-time pay was made. From the record before us it is impossible to determine the time sequence of events in relation to the issuance of unilateral contracts, Ms. Young's election to proceed under the continuing contract, and the granting of her application for temporary leave.

In any event, the Board contends that if Ms. Young desires to proceed under the Continuing Contract Law then she cannot teach half time since she taught full time the preceding year. The issue does not involve money to be paid to Ms. Young as she would receive the same amount in either situation. The matter is significant to Ms. Young due to the fact that when her year as president of NEA-W is up, she could resume full-time teaching automatically only if she had a full-time contract during her year as president. With a half-time contract, she could resume full-time teaching only if a position were available. It would be inappropriate to speculate as to the motivation of the Board in insisting that Ms. Young accept a half-time contract.

Under the circumstances herein, we concur with the trial court that Ms. Young was entitled to a full-time contract, with half-time temporary leave.

All points raised on appeal have been considered.

The judgment is affirmed.