(604 P.2d 57)

No. 50,781

BURRTON EDUCATION ASSOCIATION, *Appellee,* v. UNIFIED SCHOOL DISTRICT 369 and its Members: Eldon Baumann, Joel Goering, James Gandy, Francis E. Luginbill, and John Gray, *Appellants.*

Opinion filed November 30, 1979.

*Charles E. Rauh* and *Ralph J. Thorne* of Rauh, Thorne, Robinson & Childs, of Hutchinson, for the appellants.

*Morris D. Birch* of Nicklin & Birch Law Offices, of Wichita, for the appellee.

Before FOTH, C.J., SWINEHART and MEYER, JJ.

SWINEHART, J.: This appeal arises from negotiation procedures between plaintiff Burrton Education Association and defendant Unified School District 369, pursuant to the Collective Negotiations Act, K.S.A. 1977 Supp. 72-5413 *et seq.* (now 1978 Supp.).

Burrton Education Association (hereinafter referred to as the Association) is the exclusive representative for purposes of professional negotiations of the teachers in U.S.D. 369. The parties operated under a negotiated agreement for the 1977-78 school year. On December 1, 1977, the parties exchanged notices pursuant to K.S.A. 1978 Supp. 72-5423 relating the items to be negotiated prior to the issuance of the teachers' contracts for the 1978-79 school year. After protracted negotiations, the district court on May 24, 1978, issued an order of impasse pursuant to K.S.A. 1978 Supp. 72-5426. The order found that agreement had been reached on all items subject to negotiation with the exception of the salary schedule and the duration of the agreement. The impasse procedures outlined in K.S.A. 1978 Supp. 72-5427 through 5429 then commenced. Mediation failed to produce an agreement. A fact finder was then appointed and recommended the final position of the Association on each of the two remaining issues. The negotiating parties again met and agreed to accept the fact finder's proposal as to duration of the agreement; however, the Board refused to accept the recommendation of the fact finder concerning salaries.

On September 19, 1978, the Board voted to issue unilateral contracts which would include:

"[R]etention of the current contract [1977-78] with the exception of changes agreed to by both negotiating parties during the current negotiating term, and the duration of agreement proposed which the teachers presented at the fact finding hearing and the salary schedule . . . set out in a Board of Education Presentation . . . ."

Before contracts conforming to the September 19 Board resolution were distributed to the teachers, the Board again met on October 2, 1978, and voted to rescind its previous action. After doing so, the Board voted to issue unilateral contracts with the same salary schedule as before, but with many terms of the 1977-78 negotiated agreement either changed or deleted.

On October 13, 1978, the Association membership voted to ratify the Board's action of September 19, 1978. When the Board

did not respond, the Association filed suit to restrain the Board from issuing contracts pursuant to its October 2, 1978, resolution.

In its conclusions of law, the trial court found: (1) K.S.A. 1978 Supp. 72-5428(*f*) authorizing the Board to "take action in the best interest of the public" after impasse procedures end without agreement does not allow the Board to take action on items not noticed for negotiations nor presented to the fact finder; (2) the October 2, 1978, unilateral contracts making changes in the 1977-78 negotiated agreement not noticed for negotiation for the 1978-79 year were void; (3) the Board's action of September 19, 1978, was consistent with K.S.A. 1978 Supp. 72-5428(*f*) and may not be rescinded unilaterally; (4) the Association's ratification of the September 19, 1978, action was proper and served as an acceptance, making the September 19 unilateral contracts binding on the parties.

The trial court therefore permanently restrained and enjoined the Board from enforcing the terms and conditions as set forth in the contracts issued October 2, 1978, and further found that the terms and conditions, set forth on September 19, 1978, be declared the terms and conditions for the 1978-79 school year.

The defendant Board appeals from this judgment. In general the defendant asserts the court erred in finding that the Board's October 2, 1978, action was void and that the ratification of the defendant's September 19, 1978, action by the Association resulted in a contract between the teachers and the Board.

Before discussing the particulars of this case, it is important to understand the statutory structure of teacher negotiations, highly summarized as follows:

K.S.A. 1978 Supp. 72-5413(*g*) provides:

" 'Professional negotiation' means meeting, conferring, consulting and discussing in a good faith effort by both parties to reach agreement with respect to the terms and conditions of professional service."

K.S.A. 72-5414. Professional employees (teachers) have a right to join organizations and to "participate in professional negotiation with boards of education through representatives . . . for the purpose of establishing . . . terms and conditions of professional service."

K.S.A. 1978 Supp. 72-5415. Exclusive representation of negotiating units.

K.S.A. 72-5416 through 5420, and amendments thereto. Recognition and bargaining unit determinations.

K.S.A. 72-5421:

"A board of education and a representative selected or designated . . . may enter into an agreement covering terms and conditions of professional service. Such agreements become binding when ratified by a majority of the members of the board of education and a majority of the members of the applicable negotiating unit."

K.S.A. 72-5422. Savings clause for existing agreements.

K.S.A. 1978 Supp. 72-5423. (*a*) Rights and duties of boards of education are not affected except boards are required to recognize the professional employees' organizations and when so recognized "shall enter into professional negotiations prior to issuance of the annual teachers' contracts. . . . Notices to negotiate on new items or to amend an existing contract must be filed on or before December 1 in any school year by either party . . . ." (*b*) Every meeting except mediation and factfinding shall be open to the public. (*c*) Strikes are not authorized. (*d*) Agreements made under the act may be incorporated in the individual contracts for a period of not to exceed two years.

K.S.A. 72-5424. Binding arbitration option.

K.S.A. 72-5425. Severability.

K.S.A. 1978 Supp. 72-5426. (*a*) Either party may ask a court to declare an impasse in negotiations. (*b*) If the court finds no impasse, it shall order the parties to continue negotiations. (*c*) If an impasse is found, the court is to order impasse resolution procedures to begin.

K.S.A. 1978 Supp. 72-5427. A mediator shall be appointed and shall meet with the parties to assist in resolving the impasse. If mediation fails, the mediator shall so certify, or if he fails to do so, either party may request a fact finder.

K.S.A. 1978 Supp. 72-5428. (*a*) Upon certification or request a fact finder (or board of three) shall be appointed. (*b*) The fact finder shall meet with the parties who will present a description of the final position on each issue. (*c*) The fact finder shall have the power to conduct hearings. (*d*) The fact finder shall make findings of fact on each issue and shall recommend the adoption on each issue of either the board's or the organization's final position. The recommendation shall not be binding on either party. (*e*) Either party may make the fact finder's report public. (*f*) "After the report of the fact-finding board has been made public,

if the board of education and the recognized professional employees' organization have not resolved the impasse and reached an agreement, *the board of education shall take such action as it deems in the public interest, including the interest of the professional employees involved, and shall make such action public."* (Emphasis supplied.)

K.S.A. 1978 Supp. 72-5429. Costs of mediation and fact-finding.

K.S.A. 1978 Supp. 72-5430. Prohibited practices constituting evidence of bad faith in negotiations. Either party may petition a district court for an injunction against a prohibited practice.

K.S.A. 1978 Supp. 72-5431. Savings clause.

Since the State has enacted specific legislation which governs contract negotiations between teachers, their duly authorized representatives and school boards (K.S.A. 1978 Supp. 72-5413 *et seq.*), we must consider the factual matters that gave rise to this appeal in this context.

It is undisputed that all parties to this action proceeded under the statutory collective bargaining provisions then existing up to and including the final stage of fact-finding. When all available avenues of negotiations to arrive at a contract had failed, the Board was then in a position of offering a unilateral contract to the teachers as provided in K.S.A. 1978 Supp. 72-5428.

On appeal the Board alleges the trial court erred by: (1) holding that only the unresolved issues submitted to fact-finding procedures under K.S.A. 1978 Supp. 72-5428 and noticed for negotiation by the parties were subject to change by the Board for inclusion in its October 2 unilateral contracts; (2) finding that ratification by the Association on October 13, 1978, of the action of the Board taken September 19 made the action of the Board taken on October 2 void; (3) finding that the Board's action of October 2 was contrary to the law and therefore did not rescind the action of the Board taken on September 19.

We shall first address the Board's second issue which involves the significance of the ratification by the Association of the Board's September 19 action. Here a negotiated agreement between the Association and the Board was in effect for the 1977-78 school year, as well as the individual teachers' contracts based upon that negotiated instrument. Negotiations between the Association and the Board for the 1978-79 year were unsuccessful. For

purposes of the continuing contract law, both the negotiated agreement and the teachers' individual contracts constitute "contracts of employment" (*Riley County Education Ass'n v. U.S.D. No. 378,* 225 Kan. 385, 592 P.2d 87 [1979]), and as such would become the contracts for those teachers electing to retain their positions under the continuing contract law. However, the teachers also had the option of accepting the unilateral contracts proposed by the Board. "Absent . . . a collectively negotiated agreement properly ratified, the *individual teacher* has the option of accepting the unilateral contract offered by the Board or proceeding under the Continuing Contract Law." (Emphasis supplied.) *NEA-Wichita v. U.S.D. No. 259,* 225 Kan. 395, 400, 592 P.2d 80 (1979). As the decision to accept the unilateral contract offer proposed by the Board after the statutory negotiation process failed was an individual right of each teacher, the Association lacked the power to ratify the Board's September 19 action on behalf of the teachers. Therefore, the Association's ratification of the September 19 Board decision is immaterial to our decision in this case.

The determinative question is whether the Board had the authority to rescind its September 19 action. Under general contract law principles, the Board would certainly have had the power to rescind because the unilateral contracts were never issued to the individual teachers and never accepted by them prior to the Board's action attempting to rescind on October 2.

However, we cannot ignore the impact the 1977 amendments to the Collective Negotiations Act might have on the Board's conduct. The amendments prescribing the procedures which are to be followed for an impasse and its resolution are mandatory. See *Garden City Educators' Ass'n v. Vance,* 224 Kan. 732, 735, 585 P.2d 1057 (1978). If no agreement has been reached after exhaustion of the impasse resolution procedures, the school board "retains the final right to act in what it deems the best interest of both the teachers and the public. K.S.A. 1977 Supp. 72-5428(f)." *In re NEA-Topeka, Inc.,* 224 Kan. 582, 583, 581 P.2d 1187 (1978).

In this case we find the Board took this final action in compliance with K.S.A. 1978 Supp. 72-5428(f) on September 19, 1978, because it acted in an official capacity "in the public interest, including the interest of the professional employees involved," and made its action public. The Board determined that the

negotiation procedures had not produced an acceptable contract to the school board and therefore decided to issue a unilateral contract for the year 1978-79 to the teachers, containing all of the provisions of the 1977-78 contract, the provisions agreed to during negotiations, plus the duration of the contract provision proposed by the teachers and the salary schedule proposed by the Board to the fact finders. This action of the Board appears in the minutes of the School Board for September, 1978, as follows:

"Francis Luginbill stated that, whereas the Board of Education is negotiating in good faith with Burrton Education Association including participation in mediation and fact finding in accord with Kansas law, and whereas the findings of the fact finder have been made public, and whereas the Board of Education and the Burrton Education Association have not been able to agree upon a contract for the 1978-79 school year, and whereas the law of the State of Kansas states that this Board of Education shall take such action as it deems in the public interest including the interest of the professional employees involved, I therefore move that the Board of Education of U.S.D. 369 establish the contract of employment by the Board of Education with the teachers of Burrton School District U.S.D. 369 as follows, and which the Board of Education deems is in the public interest, including the interest of the teachers; retention of the current contract with the exception of changes agreed to by both negotiating parties during the current negotiating term, and the duration of agreement proposed which the teachers presented at the fact finding hearing and the salary schedule shown as Exhibit #3 as set out in a Board of Education Presentation of its position dated September 5, 1978. John Gray seconded the motion which carried 6-0."

Although no contracts were actually issued after the adoption of the provisions of the unilateral contract, having taken and published the action it deemed in the interest of all concerned, the Board was nonetheless precluded from taking any steps to rescind this decision until the individual teachers had a reasonable period of time to accept the unilateral contracts or to reject them and continue their employment for another year under their existing contracts. To allow the Board to rescind the statutory action it had taken without affording the teachers a reasonable opportunity to respond could potentially undermine the statutory scheme or intent of reaching an agreement between the parties as rapidly as possible. Although no specific time limits are prescribed to govern the right of the Board to take final action once impasse resolution has failed, we find that the legislature intended such action be taken without unnecessary delay. To allow the Board to change its mind at will regarding the terms of its action taken pursuant to K.S.A. 1978 Supp. 72-5428(f) could

unduly prolong the bargaining procedures and frustrate the legislative intent of reaching a final agreement between the Board and its teachers.

We therefore find that the Board was acting within the scope of its authority when it ceased negotiations with the Association and elected to issue unilateral contracts to the teachers. K.S.A. 1978 Supp. 72-5428. This action by the Board cannot be considered as an offer of additional negotiations which would be subject to Association ratification. Rather, each individual teacher had a right to accept or reject the unilateral contract within a reasonable period of time. We further find that the Board in this case did not provide the teachers a reasonable time to respond to its September 19 action before rescinding and substituting new terms on October 2.

The Board's final contention, that the trial court erred by finding that only unresolved issues noticed for negotiation and submitted to the fact finder could be included in the unilateral contracts, need not be considered in light of our conclusions discussed above. We note, however, that the dicta contained in *Riley County Education Ass'n v. U.S.D. No. 378,* 225 Kan. at 391-392, would apparently allow the Board to include provisions other than those permitted by the trial court.

We conclude that the trial court correctly found the October 2 action of the Board was void and properly enjoined the enforcement of contracts issued under it. That part of the judgment is affirmed. However, the trial court improperly found that a vote by the Association ratifying the September 19 action of the Board could bind the individual teachers. The teachers were entitled to a fair opportunity *individually* to accept the unilateral contracts offered by the Board of September 19, or to reject them and continue to teach under the provisions of the continuing contract law. (It is not too late for the Board to fulfill this duty now, and we assume it will do so.) That part of the judgment decreeing the September 19 unilateral contract to be a binding negotiated contract between the Board and the Association must be reversed.

Affirmed in part and reversed in part.