(788 P.2d 867)

No. 63,805

UNIFIED SCHOOL DISTRICT NO. 279, JEWELL COUNTY, KANSAS, *Appellant/Cross-appellee,* v. SECRETARY OF THE KANSAS DEPARTMENT OF HUMAN RESOURCES, *Appellee,* and THE JEWELL-RANDALL EDUCATION ASSOCIATION, *Appellee/Cross-appellant.*

Opinion filed March 16, 1990.

*Fred W. Rausch, Jr.*, of Topeka, for appellant/cross-appellee Unified School District No. 279.

*Don Doesken*, of Topeka, for appellee Department of Human Resources.

*David M. Schauner*, of Topeka, for appellee/cross- appellant Jewell-Randall Education Association.

*Cynthia Lutz Kelly*, of Topeka, for *amicus curiae* Kansas Association of School Boards.

Before BRISCOE, P.J., BRAZIL AND LARSON, JJ.

BRAZIL, J.: The Board of Education of Unified School District No. 279 (Board) appeals from a district court decision finding that the Jewell-Randall Education Association (Association) has standing to file a prohibited practice complaint after negotiations have ended and unilateral contracts have been issued, that the Board may include terms in a unilateral contract that were neither noticed nor negotiated, that the Secretary of the Kansas Department of Human Resources (Secretary) had authority to order the Board to pay $7,700 to the Association as a remedy for violating K.S.A. 72-5429, and that the relief granting authority given to the Secretary under K.S.A. 1989 Supp. 72-5430a(b) does not violate the Kansas Constitution. The Association cross-appeals from the district court decision finding that the Board's failure to make the unilateral contract salary increase retroactive did not constitute a prohibited practice pursuant to K.S.A. 72-5430. We affirm in part and reverse in part.

In January 1985, both the Association and the Board submitted notice of the items they proposed to negotiate for inclusion in the 1985-86 collective bargaining agreement in accordance with K.S.A. 1989 Supp. 72-5423(a). In the course of negotiations, the parties reached agreement on all issues except base salary and fringe benefits. In May 1985, both parties declared they were at impasse, and the impasse procedures of mediation and factfinding were initiated pursuant to K.S.A. 72-5427 and 72-5428. In Oc-

tober 1985, the Board's representatives rejected the factfinder's recommendations and made a counterproposal to the Association. The counterproposal offered wage increases of 10.03% and fringe benefit increases, both effective with the December payroll, not retroactive to the beginning of the school year. In April 1985, prior to impasse, the Board had made the same offer except that it was to be effective with the beginning of the school year. The October offer was $8,536 less than the previous offer. The Association's negotiating team rejected the counterproposal. Since no agreement was reached, the Board issued each teacher in the district a unilateral contract which provided a wage increase of 10.03% and a fringe benefit increase, both effective with the December payroll. Eighteen of the twenty teachers signed the unilateral contracts.

During the fall of 1985, several articles regarding the Board's proposal appeared in the Jewell County newspaper. The first discussed the factfinder's report, the Board's October proposal, and the Association's rejection of the proposal. The second article discussed the unilateral contract offer, stating:

> "The Board's new compensation package will become effective December 1, 1985. . . .
>
> "To date the Association's refusal to accept the Board's 10.03 percent offer has cost the school district over $7,700, not including the cost of the man hours required by the administration and board members to deal with the negotiations deadlock. The School Board does not feel that this cost should be borne by the taxpayers of USD 279. For this reason the Board has deducted the $8,536 to cover the current and future costs of completing this year's negotiations. The Board does not feel that it is fair for the Association to now expect the Board to offer the same amount of money proposed in good faith by the Board over half a year ago."

The Association filed a complaint against the district, alleging that the unilateral contract altered certain terms which were not noticed for negotiation and that the Board's failure to negotiate the terms which were not noticed was a prohibited practice as defined by K.S.A. 72-5430(b)(1), (3), (6), and (7). The Association additionally alleged that the Board's refusal to make the compensation package retroactive to the beginning of the 1985-86 school year constituted bad faith in professional negotiations in violation of K.S.A. 72-5430(b)(1), (5), (6), and (7). The Association requested the Secretary to grant the following relief:

1. Order the Board to reissue the unilateral contract omitting the changes in the items not noticed for negotiation and to give retroactive effect to the unilateral contract to the beginning of the 1985-86 school year.
2. Order the Board to issue a statement to the teachers acknowledging it committed the prohibited practices alleged and assuring the teachers that it will refrain from interfering with the rights of the Association in the future.
3. Order the Board to post a notice in all attendance centers and the administrative offices acknowledging it committed the prohibited practices alleged in the complaint.
4. Assess a fine of $500 against the Board payable to the Association.

A hearing was held before the Secretary during which the parties stipulated to the facts. The Secretary concluded:

1. The Association had authority or standing to file a timely complaint after the Board tendered a unilateral contract offer to the teachers.
2. The Board's act of changing unnoticed subjects in the unilateral contract offer was remedied by subsequent negotiations.
3. The deduction of $8,536 from the Board's original salary offer and the salary offered in the unilateral contract, and the suggestion that $7,700 of the deduction was used to pay for the Board's factfinding services constituted a violation of K.S.A. 72-5430(b)(1) and (5).

The Secretary ordered the Board to pay $7,700 to the Association for reimbursement of teachers within the district who were employed during the 1985-86 school year. The Association was instructed to place the money with a financial institution pending approval from the Secretary of a proposed payment to the individual teachers.

The Board appealed the Secretary's order to the district court. The district court ruled the controversy was moot because contracts were entered for the two years following the year in question. In addition, eighteen teachers signed unilateral contracts for the year in question, and the two remaining teachers chose not to pursue legal action within the six-month statutory period. In unpublished opinion No. 62,414, filed January 20, 1989, this court

reversed and remanded the case for a determination of whether the Board complied with K.S.A. 72-5429, which provides that all costs for mediation and factfinding shall be borne equally by the Board and the Association.

On remand, the district court made the following conclusions of law.

"1. The Association did have standing to file a prohibited practice complaint with the Secretary after negotiations with the Board ended and unilateral contracts were issued.

"2. When issuing unilateral contracts under K.S.A. 72-5428(f), the Board is free to include terms which were neither noticed for negotiation nor negotiated.

"3. It is not a prohibited practice for the Board to offer less unilaterally than was bargained for collectively.

"4. The Board did not commit a prohibited practice when it did not make the unilateral salary increase retroactive.

"5. The Secretary did have the authority to order the Board to pay $7,700 to the Association as a remedy for violating K.S.A. 72-5429.

"6. The relief granting authority given the Secretary under K.S.A. 72-5430a(b) is not violative of the Kansas Constitution."

1. The cross-appeal.

The Association cross-appeals, arguing that the Board committed a prohibited practice pursuant to K.S.A. 72-5430(b)(1) and (5) by not making the compensation package in the 1985-86 unilateral contract retroactive. The statute provides:

"(b) It shall be a prohibited practice for a board of education or its designated representative willfully to:

(1) Interfere with, restrain or coerce professional employees in the exercise of rights granted in K.S.A. 72-5414;

. . .

(5) refuse to negotiate in good faith with representatives of recognized professional employees' organizations as required in K.S.A. 72-5423 and amendments thereto."

K.S.A. 72-5414 provides professional employees with the right to form employees' organizations and to participate in professional negotiations with a board of education for the purpose of establishing, maintaining, protecting, or improving the terms of professional service. Here, the unilateral contract was issued by the Board to the teachers after the negotiation process was completed as required by K.S.A. 72-5428a. Because the issuance of the contract occurred after the negotiations process was complete,

the issuance of the contract did not restrain or coerce the Association during the time the Association was negotiating with the Board.

The Association argues the Board violated K.S.A. 72-5430(b)(5) by failing to notice for negotiation or negotiate the issue of the retroactivity of the wage increase. K.S.A. 1989 Supp. 72-5423(a) provides that both the Board and Association must provide notices to negotiate on new terms or to amend an existing contract on or before February 1. In *Riley County Education Ass'n v. U.S.D. No. 378*, 225 Kan. 385, 592 P.2d 87 (1979), the school district, after unsuccessful negotiations, issued unilateral contracts to the teachers containing a new item which had not been noticed for negotiation in accordance with 72-5423(a). The teachers argued that to allow U.S.D. No. 378 to include unnegotiated new items in unilateral contract offers would reduce the collective negotiations law to a nullity. In holding that a board can place a new provision in a unilateral contract, the court said:

> "We have carefully reviewed the Collective Negotiations Law and find nothing therein that would preclude the Board from placing a new provision in the unilateral contract. As previously stated, professional negotiations are defined in K.S.A. 1976 Supp. 72-5413(g) as 'meeting, conferring, consulting and discussing in a good faith effort by both parties to reach agreement with respect to the terms and conditions of professional service.' We hold that after good faith professional negotiations, pursuant to the Collective Negotiations Law applicable in June, 1977 (K.S.A. 1976 Supp. 72-5413 *et seq.*), terminated unsuccessfully, the Board could issue unilateral contracts for the next school year containing an item not noticed for negotiation pursuant to K.S.A. 72-5423." 225 Kan. at 391-92.

Here, good faith negotiations terminated unsuccessfully, and the Board issued unilateral contracts to the teachers. The fact that the unilateral contracts contained a nonretroactive pay provision, which was not noticed for negotiations, is not fatal. The Board may include provisions which were not noticed for negotiations in the unilateral contracts.

However, the real issue in this case is whether the Board, in a unilateral contract, can reduce its offer by the amount of costs it has incurred in mediation and factfinding. The reasons given by the Board for the action were that the costs should not be borne by the taxpayers and that it would be unfair for the teachers

to get the same amount of increase offered by the Board in good faith prior to the impasse.

As noted by the hearing officer for the Secretary of Human Resources, these reasons leave

"a strong impression that the Board was motivated in their action by a desire to 'punish' or 'teach' the teachers a lesson so that in future negotiations the teachers would not elect to utilize the lengthy or costly impasse procedures. At [the] very least the action placed the teachers on notice that they could at best expect to gain nothing and in fact lose if they chose to utilize impasse procedures."

Reducing the Board's offer by the amount of costs it incurred constituted a prohibited practice under K.S.A. 72-5430(b)(1) and (5) not because of its impact upon 1985-86 negotiations but rather because of its potential impact upon negotiations in subsequent years.

2. K.S.A. 72-5429.

The district court found that, by attempting to recoup its costs in the unilateral contract, the Board violated K.S.A. 72-5429 and that the statutory violation was a prohibited practice. The statute provides:

"All of the costs incurred for mediation under K.S.A. 72-5427 and for fact-finding under K.S.A. 72-5428, shall be borne equally by the board of education and the professional employees' organization involved therein. The payment of such costs shall be at such time and in such manner as is determined by the secretary."

The district court upheld the Secretary's award of $7,700 to the Association based on the violation of this statute.

Interpretation of a statute is a question of law subject to unlimited review. *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 455, 691 P.2d 1303 (1984); *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988). "The fundamental rule of statutory construction is that the purpose and intent of the legislature governs when the intent can be ascertained from the statute. In construing statutes, the legislative intention is to be determined from a general consideration of the entire act." *State v. Adee*, 241 Kan. 825, 829, 740 P.2d 611 (1987). In determining legislative intent, this court is not bound to a review of the statutory language alone but may consider the

causes which impelled the statute's adoption, the objective sought to be attained, the statute's history, and the effect of the statute when construed in the various ways suggested. *State v. Phifer*, 241 Kan. 233, 238, 737 P.2d 1 (1987).

The costs referred to in K.S.A. 72-5429 are limited to the costs that the mediator and factfinder, not the parties, incurred during impasse procedures. Any costs incurred by the Board or Association in preparing for negotiations and/or impasse proceedings must be borne by the party receiving the benefit. The Board's action was not a violation of K.S.A. 72-5429. The trial court's conclusion of law that the Secretary had the authority to award $7,700 to the Association is reversed.

3. The prohibited practice complaint.

Prohibited practice complaints are submitted to the Secretary who holds a hearing and either dismisses the complaint or determines a prohibited practice has been committed. The Secretary may grant or deny the relief sought. Review of the Secretary's decision is taken in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions, which provides for initial review of the Secretary's action in district court. K.S.A. 1989 Supp. 72-5430a(a) and (b); K.S.A. 77-609. On appeal this court must adhere to the same standards as the district court.

> " 'A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority.
>
> " 'In reviewing a district court's judgment, as above, this court will, in the first instance, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court.' " *Board of Johnson County Comm'rs v. J.A. Peterson Co.*, 239 Kan. 112, 114, 716 P.2d 188 (1986) (quoting *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, Syl. ¶¶ 1, 2, 436 P.2d 828 [1968]).

The Board argues the Association had no authority to file a prohibited practice complaint based on a violation of the duty to negotiate in good faith after the Board and the Association completed mediation, factfinding, and mandatory negotiations, and after the Board issued unilateral contract offers to the teachers. More specifically, the Board argues that K.S.A. 72-5430(a) infers

that prohibited practices must arise during negotiations, that the Board's issuance of unilateral contracts occurred after negotiations, and that therefore the Board could not be charged with refusing to negotiate in good faith in violation of K.S.A. 72-5430(b)(5). The Board also argues the Association ceased to be a real party in interest after negotiations ended and therefore had no right to file a prohibited practice complaint. The Secretary and district court both concluded that the Association had standing to file the prohibited practice complaint after negotiations with the Board ended and unilateral contracts were issued.

K.S.A. 72-5430(a) states that the commission of any prohibited practice constitutes evidence of bad faith in professional negotiations. It is a prohibited practice for the Board to interfere with, restrain, or coerce professional employees' right to join a professional employees' organization and to participate in professional negotiations. K.S.A. 72-5430(b)(1). It is also a prohibited practice for the Board to refuse to negotiate in good faith with the employees' organization or to refuse to participate in good faith mediation, factfinding, or arbitration. K.S.A. 72-5430(b)(5), and (7). Any controversy concerning prohibited practices may be submitted to the Secretary who will commence proceedings against the party alleged to have committed the prohibited practice within six months of the date of the alleged practice by serving the party with written notice of the charges. K.S.A. 1989 Supp. 72-5430a(a). The Secretary has power to adopt rules and regulations necessary to implement the professional negotiations act, K.S.A. 1989 Supp. 72-5432(a), and has established K.A.R. 49-23-6, which states a prohibited practice petition may be filed with the Secretary by a professional employee organization. K.A.R. 49-28-1 states that an allegation of a violation of K.S.A. 72-5430 may be filed with the Secretary by a professional employee organization.

There is no statutory time restriction for filing a complaint during negotiations. The statutes recognize that a prohibited practice could occur at any time as evidenced by several of the prohibited practices in K.S.A. 72-5430, including 72-5430(b)(2), which prohibits the Board from interfering with the existence of any professional employees' organization, and 72-5430(b)(3), which prohibits the Board from discriminating in regard to hiring or

encouraging or discouraging membership in any professional employees' organization. The Board is also prohibited from instituting a lockout, and the Association is prohibited from striking or picketing. K.S.A. 72-5430(b)(8) and (c)(5). All of these prohibited practices could occur at any time during the school year. Logic dictates that a prohibited practice complaint may be filed at any time.

The Board argues that the Association ceased to be a real party in interest at the close of the collective bargaining process and, therefore, had no right to file a prohibited practice complaint based on the Board's issuance of the unilateral contracts. The Board relies on *Burrton Education Ass'n v. U.S.D. No. 369*, 4 Kan. App. 2d 141, 604 P.2d 57 (1979).

*Burrton* does not support the Board's argument that the Association ceases to be a real party in interest for purposes of filing a prohibited practice complaint after negotiations have ceased. The fact that the Association cannot ratify unilateral contracts does not mean the Association cannot file a prohibited practice complaint. K.A.R. 49-23-6 and 49-28-1 state that a prohibited practice petition may be filed by a professional employee organization. Neither regulation establishes time restrictions for the filing of the petition.

This court has defined a real party in interest as follows: " 'The real party in interest is the person who possesses the right sought to be enforced, and is not necessarily the person who ultimately benefits from the recovery.' " *Citizens State Bank of Grainfield v. Kaiser*, 12 Kan. App. 2d 530, 535, 750 P.2d 422, *rev. denied* 243 Kan. 777 (1988). The Association has been granted the statutory right to participate in professional negotiations with the Board as the exclusive representative of the professional employees. K.S.A. 72-5414; K.S.A. 72-5415. The Association may file a petition asking the Secretary to determine if impasse exists and participate in the impasse resolution procedures. K.S.A. 1989 Supp. 72-5426. The Association also possesses the right to have the Board negotiate in good faith and participate in good faith mediation. K.S.A. 72-5430. When filing the prohibited practice complaint, the Association sought relief which included an assurance by the Board that it would refrain in the future from interfering with the rights of the Association. The Association

possesses the right to participate in good faith negotiations and impasse proceedings with the Board. This is the right the Association is seeking to enforce. As such, the Association is a real party in interest and may file a prohibited practice complaint against the Board.

In its complaint, the Association requested relief including that the Secretary order the Board to give retroactive effect, to the beginning of the school year, to the unilateral contract. The Secretary granted the relief and ordered the Board to pay the Association $7,700 as reimbursement to the teachers for the amount which the Board withheld to pay for its mediation and factfinding services. The Secretary granted relief based on K.S.A. 1989 Supp. 72-5430a(b), which states: "The secretary shall . . . enter a final order granting or denying in whole or in part the relief sought."

The Board argues that the Secretary lacked authority to order the Board to pay $7,700 to the Association as a reimbursement. We agree with the Board but not for the reasons it suggests. Reimbursement, or making the contracts retroactive to the beginning of the 1985-86 school year, would benefit the teachers exclusively. Each individual teacher had the option to accept the unilateral contract offered by the Board, proceed under the continuing contract law, or join in the complaint filed by the Association. Eighteen of the twenty teachers signed the unilateral contracts. The names of the other two teachers were added to the complaint by the Association but were then removed at the request of those teachers. The two teachers who refused to sign a unilateral contract or join the Association in its complaint were two of four teachers who received no pay increase under the contract because their tenure exceeded the number of wage-increase steps set by the Board.

In *Burrton*, this court held that the authority of the professional employees' representative to negotiate the teachers' contracts terminated upon the exhaustion of impasse resolution procedures without the parties reaching an agreement and the Board's issuance of unilateral contracts for the teachers. 4 Kan. App. 2d 141, Syl. ¶ 1. This court held that the decision to accept the unilateral contract offer proposed by the Board after the statutory negotiation process failed was an individual right of each teacher. The Association lacked power to ratify the unilateral contracts on

behalf of the teachers. 4 Kan. App. 2d at 146. Likewise, in this case, the Association does not have the right to request or to receive a reimbursement on behalf of the teachers.

K.S.A. 1989 Supp. 72-5430a(b) grants the Secretary authority to dismiss the prohibited practice complaint or enter a final order granting in whole or in part the relief sought. The Association argues that, once the Secretary determines there is a prohibited practice, he is free to fashion the most appropriate remedy. The Board argues that 72-5430a(b) is limited in scope and grants the Secretary only the power to find that a prohibited practice has been committed and directs the party committing the practice to stop. In this case, because the teachers were not parties to the complaint, we agree with the Board for the reasons stated in the *Burrton* case. The Secretary's award of $7,700 to the Association was not authorized. Whether 72-5430a(b) would authorize this relief if any of the teachers had joined in filing the complaint need not be decided here.

4. The constitutionality of K.S.A. 1989 Supp. 72-5430a(b).

The Board argues that K.S.A. 1989 Supp. 72-5430a(b) violates Article 2, § 1 of the Kansas Constitution, which provides: "The legislative power of this state shall be vested in a house of representatives and senate." The Board alleges that K.S.A. 1989 Supp. 72-5430a(b), which provides that the Secretary "shall enter a final order granting or denying in whole or in part the relief sought," is an unlawful delegation of legislative power to a nongovernmental association, namely the party requesting relief, because the statute contains no standards or guidelines to limit the authority to be exercised. Having determined above that the Secretary was not authorized to grant relief to the Association which was unique to the teachers, we need not address this issue.

We conclude the Association did have standing to file the prohibited practice complaint after negotiation proceedings ended and unilateral contracts were issued; the Board may include terms which were neither noticed for negotiation nor negotiated when issuing unilateral contracts; it is not a prohibited practice for the Board to offer less unilaterally than was bargained for collectively; the Board did commit a prohibited practice by reducing its unilateral contract offers by the amount of costs it had incurred in mediation and factfinding; the Board did not violate K.S.A. 72-

5429; and the Secretary did not have authority to order the Board to pay $7,700 to the Association for the reasons stated herein.

Affirmed in part and reversed in part.