No. 50,298

NATIONAL EDUCATION ASSOCIATION-FORT SCOTT, *Appellee*, v. BOARD OF EDUCATION, UNIFIED SCHOOL DISTRICT NO. 234, BOURBON COUNTY, KANSAS, *Appellant.*

(592 P.2d 463)

Opinion filed March 31, 1979.

*Arvid V. Jacobson,* of Topeka, argued the cause and was on the brief for the appellant.

*Wesley A. Weathers,* of Crane, Martin, Claussen, Hamilton and Barry, of Topeka, argued the cause, and *Randall J. Forbes,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: The Fort Scott KNEA Teachers' Association and the Board of Education of U.S.D. 234, Bourbon County, Kansas, engaged in professional negotiations. In May, 1978, the association filed a petition in the district court under K.S.A. 1977 Supp. 72-5426 alleging that negotiations were deadlocked. In the petition the association sought declaration of impasse and a temporary restraining order against the unilateral issuance of contracts by the board. As a defense to this petition the board asserted that certain 1977 amendments to the Teachers' Collective Negotiations Act, K.S.A. 1977 Supp. 72-5413 *et seq.,* were unconstitu-

tional and void. The board brings the case to us on the sole question of the constitutionality of the act.

Do the 1977 amendments to the Teachers' Collective Negotiations Act exceed legislative authority and violate the constitutional provision for a state board of education as set forth in Article 6, section 2(*a*) of the Kansas Constitution?

Art. 6, § 1 states:

"The legislature shall provide for intellectual, educational, vocational and scientific improvement by establishing and maintaining public schools, educational institutions and related activities which may be organized and changed in such manner as may be provided by law."

Art. 6, § 2(*a*) states:

"The legislature shall provide for a state board of education which shall have general supervision of public schools, educational institutions and all the educational interests of the state, except educational functions delegated by law to the state board of regents. The state board of education shall perform such other duties as may be provided by law."

The board points out that under the 1977 amendments to the Teachers' Collective Negotiations Act the Secretary of Human Resources of the State of Kansas is given and has assumed a prominent position in the negotiation and mediation process between teachers and school boards. See K.S.A. 1977 Supp. 72-5417, 72-5427(*a*)(*c*), 72-5428(*a*)(*d*), and 3 K.A.R. 49-23-1 through 49-27-1. It is the contention of the defendant that the State Board of Education is authorized by the constitution to have general supervision of the public schools, including the collective negotiation procedure, and that the provisions of the act assigning negotiation and mediation functions to the Secretary of Human Resources are unconstitutional. Under the prior law the State Board of Education was designated as the agency before whom nonrecognition disputes were to be determined. See K.S.A. 72-5417, 5418, 5419 and 5420. The Secretary of Human Resources was substituted for the State Board of Education in the 1977 amendments to the act.

Certain rules affecting our decision in this case should be kept in mind. When a statute is attacked as unconstitutional a presumption of constitutionality exists and the statute must be allowed to stand unless it is shown to violate a clear constitutional inhibition. *Shawnee Hills Mobile Homes, Inc. v. Rural Water District,* 217 Kan. 421, 435, 537 P.2d 210 (1975). It is generally agreed that the Kansas Constitution limits rather than confers

power and any power and authority not limited by the constitution remains with the people and their legislators. In *Leek v. Theis,* 217 Kan. 784, 800, 539 P.2d 304 (1975), this concept was stated as follows:

"When an act of a state legislature is assailed as void, it is only necessary to look to the federal and state constitutions for a specific restriction on that power. Thus an act of a state legislature on a rightful subject of legislation, is valid unless prohibited by the federal or state constitution. . . ."

This court need not attempt to search out constitutional authority for enacting a challenged statute, but rather must determine if the legislation so clearly violates a constitutional prohibition as to place it beyond legislative authority. *Unified School District No. 255 v. Unified School District No. 254,* 204 Kan. 282, Syl. ¶ 2, 463 P.2d 499 (1969).

Article 6, section 2 of the Kansas Constitution provides for a state board of education which shall have "general supervision" of public schools and "all the educational interests" of the state. This provision of general supervision is somewhat defined by this court in *State, ex rel., v. Board of Education* (the Peabody case), 212 Kan. 482, Syl. ¶ 10, 511 P.2d 705 (1973):

"As found and employed both in the constitution and in the statutes of this state the term 'general supervision' means something more than to advise and confer with but something less than to control."

It was pointed out in the above case that even when a constitutional provision is self-executing the legislature may enact legislation to facilitate or assist in its operation so long as the legislation is in harmony with and not in derogation of the provisions of the constitution.

In addition to case law Article 6, section 1 of the Kansas Constitution specifically provides that the legislature shall provide for education by establishing and maintaining public schools and related activities. Teachers' collective negotiations provided for by statute appear to fall within the category of related activities.

Prior to 1970 public school teachers had no legal authority to bargain collectively with boards of education. *Wichita Public Schools Employees Union v. Smith,* 194 Kan. 2, Syl. ¶ 3, 397 P.2d 357 (1964). The Teachers' Collective Negotiations Act with which we are presently concerned is solely a creature of the legislature. It is within the authority of the legislature to modify

and refine such an act so long as the legislation is in harmony and not in derogation of the constitutional provisions relating to the same subject.

Let us look at the nature of the duties of the Secretary of Human Resources to determine the reason, if any, for placing negotiations and mediation in his hands. The Department of Human Resources was created by the 1976 Executive Reorganization Order No. 14, which was issued by the governor of this state on February 10, 1976 (see L. 1976, ch. 354). This order was approved and amended by the legislature, and constitutes K.S.A. 75-5701 *et seq.* The department is administered under the direction and supervision of the Secretary of Human Resources, and includes a division of employment, a division of workers' compensation, a division of labor-management relations, and various other divisions and departments in the field of labor and management. These included the former Public Employees Relations Board absorbed by the Department of Human Resources. K.S.A. 75-5713(*c*) provides:

"The powers, duties and functions vested in the public employee relations board by K.S.A. 1975 Supp. 75-4323 relating to appointments and contracts with persons deemed necessary for the performance of its functions and to the establishment of panels of qualified persons to serve as mediators, arbitrators or members of fact-finding boards are hereby specifically transferred to and conferred and imposed upon the secretary of human resources, and said secretary shall be the successor in every way to said powers, duties and functions."

It is apparent from the foregoing that the Secretary of Human Resources should have the necessary staff and expertise to fulfill the specialized requirements of overseeing negotiation and mediation between teachers and public school boards.

Does the involvement of the Secretary of Human Resources in the collective negotiation process conflict with "general supervision" of public schools? We think not. The State Board of Education continues to have all power and authority it previously had and exercised over the public schools of this state before the Teachers' Collective Negotiations Act was passed in 1970. When additional concerns in the field of negotiation and mediation between teachers and school boards were recognized by the legislature in 1977, the Secretary of Human Resources was the logical person to look to for assistance in the area of mediation. The authority granted to the secretary in no way conflicts with the basic mission of the State Board of Education. The board's

mission is to equalize and promote the quality of education for the students of this state by such things as statewide accreditation and certification of teachers and schools. See K.S.A. 1978 Supp. 72-7513. The functions of the Secretary of Human Resources under the act are limited and confined to professional negotiations, an area not considered by this court to be within the basic mission of the public schools of this state.

The trial court pointed out:

"The legislature has assigned performance of specialized services and supervision of duties ancillary to the operation of schools and school districts to departments and agencies other than the State Board of Education. School bus operation is regulated by and drivers are licensed by the Department of Motor Vehicles, a division of the Department of Revenue. (K.S.A. 1977 Supp. 8-128, 8-238, 8-234(d). Retirement benefits for public employees are managed by the Kansas Public Employees Retirement System (K.S.A. 1977 Supp. 72-5501 et seq.). County Commissions, acting as the County Boards of Health are charged by statute (K.S.A. 1977 Supp. 65-202) with making sanitary inspections of each school building in the respective counties 'for the protection of the public health of the students of the school(s).' School safety from fire and tornado hazard has been assigned to the supervision and control of the State Fire Marshal (K.S.A. 1977 Supp. 31-133). Election of school board members is assigned to the supervision of the County Election Officers.

"Other functions of school district and therefore 'educational' operation are supervised directly by the Legislature such as investment of school district idle funds (K.S.A. 9-1401 et seq.) and issuance of school district bonds and warrants (K.S.A. 72-6761)."

It appears that the State Board of Education in its educational mission must work closely with the local boards of education. This close association would raise questions in the minds of the teachers during negotiation if the state board acted as mediator. Mediation cannot flourish in an atmosphere of suspicion. This would seem to indicate that the field of collective negotiations does not logically fit within the general duties and mission of the State Board of Education.

The board argues the act places part of the general supervision of the public schools in the hands of the Secretary of Human Resources in direct conflict with clear constitutional mandates. As previously indicated we disagree. The board relies on *State, ex rel., v. Board of Education* (the Peabody case), as strong reason for holding collective negotiations between teachers and school boards must be supervised by the State Board of Education. That case did not relate to collective negotiations and, although it is authority for holding article 6, section 2 is self-executing, the case

did not hold that said constitutional provision exhausts legislative powers on all subjects related to the field of public education. In fact, the case specifically holds otherwise. It must be kept in mind the constitution limits rather than confers power. Article 6, section 2 limits the power of the State Board of Education to "general supervision" of public schools. The legislature is authorized by the constitution to provide for "related activities." Art. 6, § 1. The subject of teachers' collective negotiations falls within "related activities" reserved to the legislature.

The board cites *State, ex rel., v. Hines,* 163 Kan. 300, 182 P.2d 865 (1947), and *State, ex rel., v. State Board of Education,* 215 Kan. 551, 527 P.2d 952 (1974), as supporting an argument that there was an unlawful delegation of a legislative function when the Secretary of Human Resources was named to participate in the mediation process between teachers and school boards. The cases cited deal with establishment and creation of school districts and their boundaries. The creation of school districts and the establishment of district boundaries are legislative functions which can only be delegated with adequate guidelines to carry out the legislative function. The rules set forth in those cases are not applicable to the present case.

The provisions of the Teachers' Collective Negotiations Act, K.S.A. 1977 Supp. 72-5417 *et seq.,* which authorize the Secretary of Human Resources to take part in the negotiation and mediation process between teachers and school boards are not impermissible as being in conflict with Article 6, section 2 of the Kansas Constitution which directs the legislature to provide for a state board of education which shall have general supervision of public schools.

Judgment affirmed.

HERD, J., not participating.