No. 63,805 ■

UNIFIED SCHOOL DISTRICT NO. 279, JEWELL COUNTY, KANSAS, *Appellant/Cross-appellee*, v. SECRETARY OF THE KANSAS DEPARTMENT OF HUMAN RESOURCES, and THE JEWELL-RANDALL EDUCATION ASSOCIATION, *Appellees/Cross-appellants.*

(802 P.2d 516)

Opinion filed December 7, 1990.

*Fred W. Rausch, Jr.*, of Topeka, argued the cause and was on the briefs for appellant/cross-appellee.

*Don Doesken,* of Topeka, argued the cause and was on the brief for appellee/cross-appellant Secretary of The Kansas Department of Human Resources.

*David M. Schauner,* of Topeka, argued the cause and was on the briefs for appellee/cross-appellant Jewell-Randall Education Association.

*Cynthia Lutz Kelly,* of Topeka, was on the brief for *amicus curiae* Kansas Association of School Boards.

The opinion of the court was delivered by

HERD, J.: This is a civil action involving interpretation of the Professional Negotiations Act, K.S.A. 72-5413 *et seq.,* in a dispute between the Jewell-Randall Education Association (Association) and the Board of Education of Unified School District No. 279 (Board).

The Board has appealed the district court's decisions that (1) the Association had authority to file a prohibited practice complaint after negotiations with the Board were completed and unilateral contracts issued, (2) the Board committed a prohibited practice in reducing the offered teacher salary by the costs of mediation and factfinding, (3) the Secretary of the Kansas Department of Human Resources (Secretary) had authority to order the Board to pay $7,700 to the Association as a remedy for violations of K.S.A. 72-5429, and (4) the authority of the Secretary to grant relief is not violative of the Kansas Constitution. The Secretary and Association cross-appeal the district court's rulings that (1) it is not a prohibited practice for the Board to include terms in unilateral contracts which were not noticed for negotiation nor negotiated and (2) failure to make the unilateral contracts retroactive was not a prohibited practice.

The facts of this case are not in dispute. Therefore, we adopt the statement of facts of the Court of Appeals:

"In January 1985, both the Association and the Board submitted notice of the items they proposed to negotiate for inclusion in the 1985-86 collective bargaining agreement in accordance with K.S.A. 1989 Supp. 72-5423(a). In the course of negotiations, the parties reached agreement on all issues except base salary and fringe benefits. In May 1985, both parties declared they were at impasse, and the impasse procedures of mediation and factfinding were initiated pursuant to K.S.A. 72-5427 and 72-5428. In October 1985, the Board's representatives rejected the factfinder's recommendations and made a counterproposal to the Association.

The counterproposal offered wage increases of 10.03% and fringe benefit increases, both effective with the December payroll, not retroactive to the beginning of the school year. In April 1985, prior to impasse, the Board had made the same offer except that it was to be effective with the beginning of the school year. The October offer was $8,536 less than the previous offer. The Association's negotiating team rejected the counterproposal. Since no agreement was reached, the Board issued each teacher in the district a unilateral contract which provided a wage increase of 10.03% and a fringe benefit increase, both effective with the December payroll. Eighteen of the twenty teachers signed the unilateral contracts.

"During the fall of 1985, several articles regarding the Board's proposal appeared in the Jewell County newspaper. The first discussed the factfinder's report, the Board's October proposal, and the Association's rejection of the proposal. The second article discussed the unilateral contract offer, stating:

" 'The Board's new compensation package will become effective December 1, 1985. . . .

" 'To date the Association's refusal to accept the Board's 10.03 percent offer has cost the school district over $7,700, not including the cost of the man hours required by the administration and board members to deal with the negotiations deadlock. The School Board does not feel that this cost should be borne by the taxpayers of USD 279. For this reason the Board has deducted the $8,536 to cover the current and future costs of completing this year's negotiations. The Board does not feel that it is fair for the Association to now expect the Board to offer the same amount of money proposed in good faith by the board over half a year ago.'

"The Association filed a complaint against the district, alleging that the unilateral contract altered certain terms which were not noticed for negotiation and that the Board's failure to negotiate the terms which were not noticed was a prohibited practice as defined by K.S.A. 72-5430(b)(1), (3), (6), and (7). The Association additionally alleged that the Board's refusal to make the compensation package retroactive to the beginning of the 1985-86 school year constituted bad faith in professional negotiations in

violation of K.S.A. 72-5430(b)(1), (5), (6), and (7). The Association requested the Secretary to grant the following relief:

"1. Order the Board to reissue the unilateral contract omitting the changes in the items not noticed for negotiation and to give retroactive effect to the unilateral contract to the beginning of the 1985-86 school year.

"2. Order the Board to issue a statement to the teachers acknowledging it committed the prohibited practices alleged and assuring the teachers that it will refrain from interfering with the rights of the Association in the future.

"3. Order the Board to post a notice in all attendance centers and the administrative offices acknowledging it committed the prohibited practices alleged in the complaint.

"4. Assess a fine of $500 against the Board payable to the Association.

"A hearing was held before the Secretary during which the parties stipulated to the facts. The Secretary concluded:

"1. The Association had authority or standing to file a timely complaint after the Board tendered a unilateral contract offer to the teachers.

"2. The Board's act of changing unnoticed subjects in the unilateral contract offer was remedied by subsequent negotiations.

"3. The deduction of $8,536 from the Board's original salary offer and the salary offered in the unilateral contract, and the suggestion that $7,700 of the deduction was used to pay for the Board's factfinding services constituted a violation of K.S.A. 72-5430(b)(1) and (5).

"The Secretary ordered the Board to pay $7,700 to the Association for reimbursement of teachers within the district who were employed during the 1985-86 school year. The Association was instructed to place the money with a financial institution pending approval from the Secretary of a proposed payment to the individual teachers.

"The Board appealed the Secretary's order to the district court. The district court ruled the controversy was moot because contracts were entered for the two years following the year in question. In addition, eighteen teachers signed unilateral contracts for the year in question, and the two remaining teachers chose not to pursue legal action within the six-month statutory period. In

unpublished opinion No. 62,414, filed January 20, 1989, this court reversed and remanded the case for a determination of whether the Board complied with K.S.A. 72-5429, which provides that all costs for mediation and factfinding shall be borne equally by the Board and the Association.

"On remand, the district court made the following conclusions of law.

" '1. The Association did have standing to file a prohibited practice complaint with the Secretary after negotiations with the Board ended and the unilateral contracts were issued.

" '2. When issuing unilateral contracts under K.S.A. 72-5428(f), the Board is free to include terms which were neither noticed for negotiation nor negotiated.

" '3. It is not a prohibited practice for the Board to offer less unilaterally than was bargained for collectively.

" '4. The Board did not commit a prohibited practice when it did not make the unilateral salary increase retroactive.

" '5. The Secretary did have the authority to order the Board to pay $7,700 to the Association as a remedy for violating K.S.A. 72-5429.

" '6. The relief granting authority given the Secretary under K.S.A. 72-5430a(b) is not violative of the Kansas Constitution.' "
*U.S.D. No. 279 v. Secretary, Kansas Dept. of Human Resources,* 14 Kan. App. 2d 248, 249-52, 788 P.2d 867 (1990).

From the outset we recognize that appellate review of an agency action is reviewable as in other civil cases. K.S.A. 77-623. The interpretation of a statute is a question of law and it is our function to interpret the statute to give it the intended effect. *U.S.D. No. 352 v. NEA-Goodland,* 246 Kan. 137, 140, 785 P.2d 993 (1990). The administrative interpretation of a statute will be given consideration and effect, but the final construction of a statute rests with the courts. *National Gypsum Co. v. Kansas Employment Security Bd. of Review,* 244 Kan. 678, 682, 772 P.2d 786 (1989); *Amoco Production Co. v. Armold, Director of Taxation,* 213 Kan. 636, Syl. ¶¶ 4, 5, 518 P.2d 453 (1974.)

The first issue we consider is the Board's contention the Association lacked authority to file a prohibited practice complaint after impasse procedures were fully implemented and unilateral contracts were issued. The Association's complaint was based

upon an allegation of bad faith negotiations prohibited by K.S.A. 72-5430(b)(5). The Board contends after impasse and mediation there was no duty for either party to negotiate; thus, it could not be guilty of bad faith negotiations. We disagree.

The Court of Appeals correctly noted that K.S.A. 1989 Supp. 72-5430a authorizes the submission of any controversy concerning a prohibited practice to the Secretary and that proceedings on the complaint shall be commenced within six months of the alleged practice. K.S.A. 1989 Supp. 72-5432 authorizes the Secretary to adopt rules and regulations necessary to implement and administer K.S.A. 72-5413 *et seq.* K.A.R. 49-23-6 states that a prohibited practice complaint may be filed by a professional employee organization, and K.A.R. 49-28-1 provides that an allegation of a violation of K.S.A. 72-5430 may be filed with the Secretary by a professional employee organization.

Neither K.S.A. 1989 Supp. 72-5430a nor any other statutory provision of the Professional Negotiations Act limits the time in which to file a prohibited practice complaint to the period of negotiations. The Association's complaint alleged that the Board committed a prohibited practice through bad faith negotiations by including unnoticed and non-negotiated terms in the unilateral contracts and by failure to make the unilateral contracts retroactive. Regardless of the complaint's validity, we find no restriction in the statutes requiring such a complaint to be filed during negotiations. As the Court of Appeals recognized, several provisions of K.S.A. 72-5430(b) render it impossible to file a prohibited practice complaint during negotiations. See K.S.A. 72-5430(b)(2), (3), (8) and (c)(5). Therefore, we affirm the district court and the Court of Appeals as to this issue.

Next, we consider the Association's and Secretary's cross-appeal. During negotiations, the Board and the Association reached a tentative agreement on all items except base salary and fringe benefits. The Association alleged in its prohibited practice complaint that the issuance of unilateral contracts by the Board following impasse procedures alter terms and conditions of professional service without notice to or negotiations with the Association. The Association argues that the Board's action was a prohibited practice under K.S.A. 72-5430(b)(1) and (5).

K.S.A. 72-5430(b)(1) states it is a prohibited practice for the Board to willfully "[i]nterfere with, restrain or coerce professional employees in the exercise of rights granted in K.S.A. 72-5414." K.S.A. 72-5414 grants professional employees the right to participate in professional negotiations through their representative to establish, maintain, protect, or improve terms and conditions of professional service.

The unilateral contracts in conflict were not issued by the Board until the negotiations process was completed in accordance with K.S.A. 72-5428a. Since negotiations were completed when the unilateral contracts were issued, the Board could not, and did not, coerce or interfere with negotiations. Thus, there was no violation of K.S.A. 72-5430(b)(1).

K.S.A. 72-5430(b)(5) states it is a prohibited practice for a board of education to refuse to negotiate in good faith. We hold the Board's action did not constitute a refusal to negotiate in good faith. In *Riley County Education Ass'n v. U.S.D. No. 378*, 225 Kan. 385, 592 P.2d 87 (1979), we considered whether it was a prohibited practice for the school board to include new terms and conditions in unilateral contracts issued after negotiations terminated. In *Riley County*, the negotiations ceased prior to passage of the impasse procedure legislation in 1977. Nevertheless, we stated the school board was clearly empowered to include new and non-negotiated terms in unilateral contracts issued after impasse procedures were utilized pursuant to K.S.A. 72-5428(f). We concluded there were no provisions in the Collective Negotiations Act (now Professional Negotiations Act) to preclude placing new items in unilateral contracts issued after good faith negotiations terminated unsuccessfully. 225 Kan. at 391-92.

In *Dodge City Nat'l Education Ass'n v. U.S.D. No. 443*, 6 Kan. App. 2d 810, 635 P.2d 1263, *rev. denied* 230 Kan. 817 (1981), considered after the 1977 impasse procedures were implemented, the Court of Appeals determined a board of education could not change a mandatorily negotiable item in a unilateral contract following successful negotiations. The court recognized, however, that a school board could issue unilateral contracts with an item not noticed or negotiated following the termination of unsuccessful negotiations. 6 Kan. App. 2d at 811.

The Association contends *Riley County* and *Dodge City* are not controlling because the referenced statements were dicta. Although dicta does not govern a judgment in a subsequent controversy, the dictum developed in prior opinions is respected. *Flax v. Kansas Turnpike Authority*, 226 Kan. 1, Syl. ¶ 1, 596 P.2d 446 (1979); *Medford v. Board of Trustees of Park College*, 162 Kan. 169, 173, 175 P.2d 95 (1946). Thus, we are not required to ignore the previous statements of this court and the Court of Appeals.

The Association also argues that reliance on *Riley County* promotes bad faith negotiations and provides an incentive for school boards to reach an impasse in negotiations in order to avoid negotiations on mandatorily negotiable items. We do not agree.

Where mediation and factfinding prove unsuccessful in resolving an impasse in school board and professional employee negotiations, K.S.A. 72-5428(f) mandates that the board of education "shall take such action as it deems in the public interest, including the interest of the professional employees involved, and shall make such action public." The language of K.S.A. 72-5428(f) indicates an intent by the legislature to grant school boards complete freedom in their actions where impasse procedures fail, subject to the limitation to act in the public interest. The fundamental rule of statutory construction is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute. *Watkins v. Hartsock*, 245 Kan. 756, 759, 783 P.2d 1293 (1989); *Taylor v. Perdition Minerals Group, Ltd.*, 244 Kan. 126, 133, 766 P.2d 805 (1988); *Hunziker v. School District*, 153 Kan. 102, 107, 109 P.2d 115 (1941).

Issuance of unilateral contracts containing new items not noticed or negotiated does not violate the mandates of K.S.A. 72-5428a or 72-5430(b)(5). The school board must consider the public interest and the interests of the professional employees; however, there is no requirement that the school board must offer the exact terms negotiated prior to impasse procedures. Placing such a limitation on the school board's authority would be contrary to the clear and unequivocal language of K.S.A. 72-5428(f). Therefore, we hold the Board did not violate K.S.A. 72-5430(b)(5) by inclusion of unnoticed and non-negotiated items in its unilateral

contracts issued after unsuccessful impasse procedures were completed.

The Association and Secretary also contend in their cross-appeal that the Board violated K.S.A. 72-5430(b)(1) and (5) by refusing to make the unilateral contracts retroactive. The contracts issued by the Board provided a fringe benefit increase and a wage increase of 10.03 percent, effective with the December payroll, which amounted to a 7.9 percent wage increase for the school year.

As we discussed before, the unilateral contracts were not issued until professional negotiations were completed and impasse procedures had been unsuccessful. We find no evidence of coercion in negotiations nor bad faith negotiations and the Board's action is within the authority granted boards of education in K.S.A. 72-5428(f). The Association's remedy, if any, is in the legislature.

The third issue we consider, and the central controversy of this case, is whether the Board committed a prohibited practice under K.S.A. 72-5430(b)(1) by reducing the professional employees' salaries by the amount of the Board's mediation and fact-finding costs.

K.S.A. 72-5429 provides:

"All of the costs incurred for mediation under K.S.A. 72-5427 and for factfinding under K.S.A. 72-5428, shall be borne equally by the board of education and the professional employees' organization involved therein. The payment of such costs shall be at such time and in such manner as is determined by the secretary."

The Secretary determined substantial evidence existed to support a finding that the Board's salary offer was reduced by $7,700 to cover the costs incurred by the Board in mediation and fact-finding. The Secretary ruled that such action was directed at punishing the teachers for utilizing impasse procedures and therefore constituted a prohibited practice.

The district court also determined the $7,700 salary reduction was a prohibited practice. The district court's decision, however, was not based upon a violation of K.S.A. 72-5430. Rather, the district court ruled the statutory violation of K.S.A. 72-5429 constituted a prohibited practice.

The Court of Appeals agreed with the Secretary and ruled that *reduction* of the Board's offer by the amount of its costs incurred

constituted a prohibited practice under K.S.A. 72-5430(b)(1) and (5) because of its potential impact upon negotiations in subsequent years. The Court of Appeals further ruled, without discussion, that the Board's action did not violate K.S.A. 72-5429, and the Secretary, therefore, was without authority to award the $7,700 to the Association. *U.S.D. No. 279*, 14 Kan. App. 2d at 254-55.

The Association contends the salary reduction was aimed at punishing teachers for utilizing impasse procedures and requires the teachers to assume the costs of impasse procedures. Since K.S.A. 72-5429 mandates that mediation and factfinding costs be borne equally, the Association alleges the statutory violation constituted a prohibited practice.

The Board contends that conditions changed from the time of earlier salary offers and the costs incurred for mediation and factfinding had not been budgeted. Therefore, the Board concludes it would be more fair to reduce the teachers' salaries than to reduce the funds budgeted for the library, laboratory equipment, or teachers' aides.

We find the Board's action a violation of K.S.A. 72-5430(b)(1). Even though negotiations had ceased prior to issuance of the Board's unilateral contract offer, charging teachers with the Board's attorney fees and other expenses of negotiation casts a chilling effect upon future professional negotiations. Thus, the Board's action constituted willful interference and coercion in negotiations. We hold K.S.A. 72-5429 pertains only to the costs of the mediator and impasse board, and such costs shall be borne equally by the Board and the Association. Thus, the Association is responsible for one-half of the mediator and factfinding board fees. The $7,700 involved here, however, is the Board's attorney fees and other expenses incurred in negotiation and mediation. The Association owes none of those expenses, just as the Board is not responsible for the costs of the Association's legal representation. We find the Board's action a prohibited practice and thus constituted bad faith in negotiations in violation of K.S.A. 72-5430(b)(1). K.S.A. 72-5430(a) states: "The commission of any prohibited practice, as defined in this section, *among other actions*, shall constitute evidence of bad faith in professional negotiation." (Emphasis added.)

The final issues we examine are whether the Secretary had authority to award the Association $7,700 as a remedy for a prohibited practice and, if such authority exists, whether it violates the Kansas Constitution.

The Secretary and district court each found the Secretary had authority to award the $7,700 remedy to the Association based upon the language of K.S.A. 1989 Supp. 72-5430a, which states in pertinent part:

"(a) Any controversy concerning prohibited practices may be submitted to the secretary. . . .

"(b) The secretary shall either dismiss the complaint or determine that a prohibited practice has been or is being committed, and *shall enter a final order granting or denying in whole or in part the relief sought.*" (Emphasis added.)

The Court of Appeals reversed the district court and ruled that reimbursement for the 1985-86 school year would benefit the teachers exclusively. The Court of Appeals reasoned the teachers were not parties to the complaint and the Association's right to request reimbursement on their part expired upon each individual teacher's acceptance of the unilateral contract; thus, the Secretary did not have authority to reimburse the Association. *U.S.D. No. 279*, 14 Kan. App. 2d at 258-59.

The Board urges this court to adopt the holding and reasoning of the Court of Appeals in support of its argument that the Secretary lacked authority to expend public funds and that the Association cannot be reimbursed for something the teachers never had. In *Burrton Education Ass'n v. U.S.D. No. 369*, 4 Kan. App. 2d 141, 146, 604 P.2d 57 (1979), the Court of Appeals considered the Association's authority to ratify a school board's rescinded resolution after unilateral contracts were issued and accepted by individual teachers. The Court of Appeals found the decision to accept the unilateral contract issued by the Board was an individual right of each teacher, and the Association, therefore, lacked the authority to ratify the Board's action after unsuccessful negotiations were completed.

The Board contends *Burrton* governs the present conflict and prohibits the Association from receiving $7,700 as reimbursement for teachers who already accepted unilaterally issued contracts. We do not find this argument persuasive. The lack of authority

to ratify an offer under particular circumstances does not establish that the Association is without power to seek a remedy for a statutory violation of the impasse procedures act. K.S.A. 1989 Supp. 72-5430a mandates that any controversy concerning a prohibited practice be submitted to the Secretary, who shall make findings of fact and ultimately dismiss the complaint or grant relief. Nowhere does the statute require that a prohibited practice complaint be filed prior to the termination of unsuccessful negotiations.

The Court of Appeals' ruling, therefore, is contrary to the legislative intent to grant the Secretary discretionary authority to fashion an appropriate remedy where relief is called for. To require teachers to decline a unilateral contract or otherwise lose the right to seek a remedy for a prohibited practice is harsh and contrary to the express intent of the Professional Negotiations Act to encourage meeting and conferring and harmonious relations between the Board and professional employees. In essence, the Court of Appeals' opinion allows the Board to violate the statutory mandate against prohibited practices because no remedy is available to the professional employees through their representative.

An examination of the federal Labor-Management Relations Act, 29 U.S.C. §§ 141-197 (1988), provides us with guidance on the Secretary's authority to provide a remedy. See *National Education Association v. Board of Education*, 212 Kan. 741, 749, 512 P.2d 426 (1973). 29 U.S.C. § 160(c) (1988) provides in pertinent part:

"If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter."

At the outset, we recognize the federal statute differs from the Kansas statute in that the federal legislation provides for the specific remedies of reinstatement and back pay. Nevertheless, the federal statute directs the hearing board to take other affirmative action to remedy a finding of unfair labor practice. Thus,

the federal cases which have dealt with this statute provide guidance in the present case.

In numerous actions to enforce the National Labor Relations Board's orders under § 160(c), the federal courts have upheld the Board's order on the basis that it is the Board's function, not the courts, to determine how to expunge the effects of prior prohibited practices. *Furr's, Inc. v. N.L.R.B.*, 381 F.2d 562, 570 (10th Cir.), *cert. denied* 389 U.S. 840 (1967); *N.L.R.B. v. General Drivers, Chauffeurs & Helpers, Etc.*, 264 F.2d 21, 23 (10th Cir. 1959). As long as the Board's remedy is not oppressive nor contrary to the policies of the act, the court will not strike down a proposed remedy. *N.L.R.B. v. King Radio Corporation*, 416 F.2d 569, 573 (10th Cir. 1969), *cert. denied* 397 U.S. 1007 (1970).

In *N.L.R.B. v. Rutter-Rex Mfg. Co.*, 396 U.S. 258, 24 L. Ed. 2d 405, 90 S. Ct. 417 (1969), *reh. denied* 397 U.S. 929 (1970), the defendant, found guilty of refusal to bargain, sought relief from the National Labor Relations Board's order to reinstate all strikers and make them whole for loss of pay. The United States Supreme Court, in considering § 160(c), found the Board's remedial power was a broad discretionary power subject to limited judicial review and that the reparation order was designed to vindicate the public policy of the statute by making employees whole for losses suffered on account of the defendant's unfair labor practice. 396 U.S. at 262-63. Thus, the order to pay back pay was held to be a legitimate remedy.

After reviewing the foregoing cases and considering the parties' arguments, we are convinced the Court of Appeals erred in ruling the Association lacked authority to seek a monetary remedy for the Board's violation of K.S.A. 72-5429. K.S.A. 1989 Supp. 72-5430a grants broad power to the Secretary to fashion appropriate relief when a prohibited practice has occurred. To rule otherwise would be contrary to the clear intent of the legislature. We do not believe the legislature purposefully defined certain acts of prohibited practice, provided procedures to file a complaint of such acts, and granted the Secretary authority to determine whether or not the complained-of action constituted a prohibited practice without also granting the Secretary authority to remedy an infraction.

The Board next contends such a broad grant of power to the Secretary is an unlawful delegation of legislative authority. Article 2, § 1 of the Kansas Constitution provides: "The legislative power of this state shall be vested in a house of representatives and senate."

For support, the Board relies upon *Gumbhir v. Kansas State Board of Pharmacy*, 228 Kan. 579, 618 P.2d 837 (1980). In *Gumbhir*, the statute at issue prevented applicants for registration as licensed pharmacists who did not possess an undergraduate degree from a school accredited by the American Council on Pharmaceutical Education from taking the required state examination. K.S.A. 1979 Supp. 65-1631(a). Gumbhir's undergraduate degree was from Punjab University in Chandrigarh, India, a nonaccredited school. 228 Kan. at 580. In holding the statutory provision constitutionally impermissible as an unlawful delegation of legislative authority to a nongovernmental authority, we commented:

"This constitutional provision [art. 2, § 1] prevents usurpation of legislative authority by other departments of government as well as by a non-governmental agency or a private individual. The authority to make obligatory rules and provide penalties for breach of said rules belongs to the legislature. An unlawful delegation of legislative power is contrary to the public policy expressed in the Constitution." 228 Kan. at 582.

Notwithstanding the *Gumbhir* decision, we have stated that legislative authority may be delegated to an administrative body where guidelines are set forth in the statute which establish the manner and circumstances of the exercise of such power. *State, ex rel. v. Bennett*, 219 Kan. 285, 300, 547 P.2d 786 (1976). Where the legislature enacts general provisions for regulation and grants a particular state agency the discretion to fill in the details, we will not strike down the legislation as constitutionally impermissible unless such provisions fail to fix reasonable and definite standards to govern exercise of such authority. *Gumbhir v. Kansas State Board of Pharmacy*, 228 Kan. at 584.

The Board argues that K.S.A. 1989 Supp. 72-5430a fails to provide guidelines or limits and is therefore unconstitutional. We disagree. In construing the statute, the legislative intention is to be determined from consideration of the entire act. *Watkins v. Hartsock*, 245 Kan. 756, 759, 783 P.2d 1293 (1989); *State v. Adee*, 241 Kan. 825, 829, 740 P.2d 611 (1987); *Director of Property*

*Valuation v. Golden Plains Express, Inc.*, 13 Kan. App. 2d 48, 49, 760 P.2d 1227 (1988).

K.S.A. 1989 Supp. 72-5426 requires the Board or Association to file a petition with the Secretary seeking an investigation and determination on the issue of impasse and requires the Secretary to begin impasse resolution procedures and conduct a hearing. The Secretary is also granted power to appoint a mediator, K.S.A. 72-5427, and factfinder, K.S.A. 72-5428. In addition, K.S.A. 1989 Supp. 72-5430a mandates that the Secretary *shall* make findings of fact and dismiss the complaint or enter a final order granting or denying the relief sought.

These statutory provisions provide substantial guidelines and limitations on the Secretary's authority concerning impasse procedures and prohibited practices. K.S.A. 1989 Supp. 72-5430a grants the Secretary discretion to fill in the details of appropriate relief given the circumstances relating to any of the several prohibited practices.

In addition to finding definite standards on the exercise of authority granted to the Secretary in the Professional Negotiations Act, we hold the Secretary exercises a quasi-judicial function rather than a legislative function. In *Gawith v. Gage's Plumbing & Heating Co., Inc.*, 206 Kan. 169, 476 P.2d 966 (1970), the court adopted the United States Supreme Court's test for determining whether an administrative agency performed a legislative or judicial function:

" '. . . A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or part of those subject to its power. . . .' " 206 Kan. at 178 (citing *Prentise v. Atlantic Coast Line*, 211 U.S. 210, 226, 53 L. Ed. 150, 29 S. Ct. 67 [1908]).

Thus it was determined the Director of Workers Compensation performed a constitutionally permissible quasi-judicial function. 206 Kan. at 179-80.

We conclude the Secretary of the Department of Human Resources performs a quasi-judicial function in investigating, initiating, and conducting hearings on impasse resolution procedures and prohibited practice complaints. Therefore, we hold the del-

egation of authority to the Secretary herein does not violate Article 2, § 1 of the Kansas Constitution.

The Board's final argument is that K.S.A. 1989 Supp. 72-5430a violates Article 6, §§ 2 and 5 of the Kansas Constitution. Article 6, § 2(a) provides:

"The legislature shall provide for a state board of education which shall have general supervision of public schools, educational institutions and all the educational interests of the state, except educational functions delegated by law to the state board of regents. The state board of education shall perform such other duties as may be provided by law."

Article 6, § 5 states: "Local public schools under the general supervision of the state board of education shall be maintained, developed and operated by locally elected boards."

The Board contends the authority to maintain, develop, and operate public schools cannot be delegated by the legislature to some other state agency. The Board further alleges the authority to devise relief as provided in K.S.A. 1989 Supp. 72-5430a could be constitutionally delegated to the State Board of Education, but not to the Secretary. Finally, the Board asserts that any function which can be classified as involving maintenance, development, or operation of local schools must be performed by the locally elected school board or state board of education and the manner in which district funds are expended is clearly an act involving the maintenance, development, and operation of local schools.

The Board's arguments were previously addressed in *NEA-Fort Scott v. U.S.D. No. 234*, 225 Kan. 607, 592 P.2d 463 (1979). In *NEA-Fort Scott*, the local school board attacked the constitutionality of the 1977 amendments to the Teachers' Collective Negotiations Act, as violative of Article 6, § 2(a) of the Kansas Constitution. This court stressed the general rule that legislation is presumed constitutional and must be allowed to stand unless a clear violation exists. 225 Kan. at 608. The court further emphasized the Kansas Constitution limits rather than confers powers. 225 Kan. at 608-09. We concluded the mediation and negotiation authority granted to the Secretary in no way conflicted with "the basic mission" of the State Board of Education. We found the Board's mission was to equalize and promote the quality

of education through statewide accreditation and certification of teachers and schools. 225 Kan. at 610-11.

The rules of law and reasoning of the court in *NEA-Fort Scott* apply to the case at hand. The Secretary's function as a quasi-judicial administrator in conflicts arising from allegations of local school board prohibited practice actions in no way conflicts with the basic mission of school boards. The resolution of a dispute and the grant or denial of relief to remedy the effects of any prohibited practice do not alter or affect the maintenance, development, or operation of local schools. Therefore, we find K.S.A. 1989 Supp. 72-5430a constitutional.

The judgment of the Court of Appeals is affirmed in part and reversed in part. The judgment of the district court is affirmed.

ABBOTT, J., not participating.