The Honorable Anthony Hensley State Senator, 19th District 2226 S.E. Virginia Avenue Topeka, Kansas 66605-1357
Dear Senator Hensley:
As State Senator for the 19th District, you request our opinion regarding the constitutionality of an agreement between a unified school district and a private, for-profit corporation regarding management and operation of designated schools within the unified school district. Specifically, you ask whether the agreement between Unified School District No. 259 and the Edison Project, L.P., entered into January 23, 1995, violates Sections 2 and 5 of Article 6 of the Kansas Constitution. Our review of the agreement, therefore, is limited to determining whether the concept set forth in the agreement would comply with Sections 2 and 5 of Article 6 of the Kansas Constitution.
The clerk for the Board of Education for Unified School District No. 259 (USD 259) has provided a copy of the agreement between USD 259 and Edison Project, L.P. (Edison).
The agreement is 22 pages long. Attached to the agreement are 13 appendices, which are incorporated into the agreement by reference, and one addendum. References in the following paragraphs are to particular provisions of the agreement as provided by the clerk, unless otherwise noted.
On January 23, 1995, USD 259 and Edison entered into an agreement whereby Edison would provide an educational program that offers "educational excellence and a laboratory for educational innovation that is based on Edison's unique school design, comprehensive educational programs, and management principles. . . ." Introductory Article. Pursuant to the agreement, USD 259 "assigns to Edison, all functions that relate to educational services and the management and operation of the District schools" identified in the agreement. Article 2.1. Dodge Elementary School was the first public school designated as a Wichita-Edison Partnership School. Appendix A. By addendum dated December 9, 1996, Jardine Middle School received a similar designation. Although no other addenda were included in the copy of the agreement provided, it is our understanding that two additional elementary schools — Ingalls Elementary School and Isley Elementary School — have as of August, 1997 been designated as Wichita-Edison Partnership Schools.
Article 6 of the Kansas Constitution has since admission of the State in 1861 provided for the educational interests of the State. See Robinson v. Kansas State High School Activities Association,260 Kan. 136, 143 (1997). Article 6 underwent a comprehensive constitutional amendment in 1966.260 Kan. at 144. Since that time, the applicable provisions of Section 2 of Article 6 of the Kansas Constitution have stated:
 "(a) The legislature shall provide for a state board of education which shall have general supervision of public schools, educational institutions and all the educational interests of the state, except educational functions delegated by law to the state board of regents. The state board of education shall perform such other duties as may be provided by law."
Section 5 of Article 6 has stated:
 "Local public schools under the general supervision of the state board of education shall be maintained, developed and operated by locally elected boards. When authorized by law, such boards may make and carry out agreements for cooperative operation and administration of educational programs under the general supervision of the state board of education, but such agreements shall be subject to limitation, change or termination by the legislature." (Emphasis added.)
Rules regarding construction of constitutional provisions are set forth in Board of Leavenworth County Comm'rs v. McGraw Fertilizer Serv., Inc., 261 Kan. 901
(1997).
 "In ascertaining the meaning of a constitutional provision, the primary duty of the courts is to look to the intention of the makers (the legislature) and the adopters (the voters) of that provision. State ex rel. Stephan v. Finney, 254 Kan. 632, 654, 867 P.2d 1034
(1994). A constitutional provision is not to be narrowly or technically construed, but its language should be interpreted to mean what the words imply to persons of common understanding. 254 Kan. at 654; Colorado Interstate Gas Co. v. Board of Morton County Comm'rs, 247 Kan. 654, 660, 802 P.2d 584 (1990). Words in common usage are to be given their natural and ordinary meaning in arriving at a proper construction. Farmers Co-op v. Kansas Bd. of Tax Appeals, 236 Kan. 632, 635, 694 P.2d 462 (1985)." McGraw Fertilizer Serv., Inc., 261 Kan. at 905.
The Kansas Supreme Court has historically held that the authority of the State Board of Education under Section 2 of Article 6 of the Kansas Constitution grants the Board "the power to inspect, to superintend, to evaluate, and to oversee for direction." Unified School District No. 380, Marshall County v. McMillen, 252 Kan. 451,460 (1993); State, ex rel., v. Board of Education (Peabody), 212 Kan. 482, 490-91 (1973). "As found and employed in both the Kansas Constitution and in the statutes of this state, this court has held the term `general supervision' means something more than to advise and confer with, but something less than to control." McMillen, 252 Kan. at 460. See also National Education Ass'n-Fort Scott v. Board of Education,225 Kan. 607, 609 (1979); Peabody, 212 Kan. at 492. The State Board's mission is to equalize and promote the quality of education through statewide accreditation and certification of teachers and schools. Unified School District No. 279, Jewell County v. Secretary of Kansas Department of Human Resources, 247 Kan. 519, 535-36
(1990); NEA-Ft. Scott, 225 Kan. at 610-11.
The concept set forth in the agreement between USD 259 and Edison would not infringe upon the role of the State Board as set forth in Section 2 of Article 6 of the Kansas Constitution. Pursuant to Article 7.6 of the agreement, "[e]ducational programs provided by Edison shall meet federal, state, and local laws, rules, regulations and State and District policies unless such requirements are or have been waived." Edison is not permitted to adopt rules, regulations, or policies which conflict with Federal, State, and local laws, rules, regulations, and policies. Article 7.7. USD 259 remains under an obligation to "issue diplomas, in accordance with state law, to Edison students who complete the requirements for such diplomas." Article 9.3. It appears to be the intention of the parties to the agreement that all personnel working at Edison comply with certification requirements of the State Board. See Article 11.9. Under such a concept, the State Board would continue to be in a position in which it would be able to provide general supervision of the schools operated in accordance with the agreement between USD 259 and Edison.
Pursuant to Section 5 of Article 6 of the Kansas Constitution, local public schools are to be maintained, developed, and operated by locally elected boards of education. The constitutional provision has been in this form since adoption in 1966 of the amendments to Article 6. The amendment of Section 5 of Article 6 was intended to give constitutional credence to the long-standing tradition of local control and operation of public schools by locally elected boards of education. Kansas Legislative Council, The Education Amendment to the Kansas Constitution, p. 29 (Publication No. 256, December 1965). It was recognized, however, that there would be instances where special educational programs that should be provided at the local level would not fit into existing school district arrangements. "In these instances, this section of the proposed new Article 6 authorizes the legislature by enactment of enabling legislation to permit school districts to administer cooperative programs, under the supervision of the state board of education; the legislature would retain the power to change or terminate agreements." Id. Further, "[a]lthough not specifically stated, local boards could also, with legislative authorization, enter into agreements with public or private educational institutions, municipal governments, and recreation commissions, subject to general supervision of the state board of education." Id. With this background, the comprehensive amendment of Article 6 of the Kansas Constitution was submitted to the electorate of Kansas. The amendment was approved on November 8, 1966.
In determining the proper construction of Section 5 of Article 6, we look to the intention of the makers and adopters of the provision. McGraw Fertilizer Serv., Inc., 261 Kan. at 905.
Its language should be interpreted to mean what the words imply to persons of common understanding. Id. The term "operate" is defined in Black's Law Dictionary as "[t]o perform a function, or operation, or produce an effect." Black's Law Dictionary 984 (1979). The definition refers to the term "operation," which is itself defined in part as "[e]xertion of power; the process of operating or mode of action; an effect brought about in accordance with a definite plan; action; activity." Id. The Kansas Supreme Court has provided a construction of the term "operation" in a case reviewing whether Section 16 of Article 2 of the Kansas Constitution may have been violated due to a discrepancy in terms used in the title and body of a legislative act.
 "While the body of the act uses the word `operation,' and the title of the act uses the word `maintenance,' the two words designate the same thing. An airport is not `operated' in the sense that a machine is operated or in the sense that a surgeon performs an operation. To operate an airport is to maintain it in a manner to effect accomplishment of results appropriate to the nature of the enterprise. To maintain an airport is to keep it in a state of efficiency for the furnishing of those facilities and the rendition of those services which air transportation and communication demand. Therefore the court concludes the statute is not void because of defect of title." Concordia-Arrow Flying Service Corp. v. City of Concordia,
 131 Kan. 247, 250-51 (emphasis added).
The fact that a private entity tends to the performance of functions necessary in the operation of a facility owned by a public entity does not necessarily mean the public entity no longer operates the facility provided the performance of such functions is subject to the terms of an agreement between the private entity and the public entity. See Lario Enterprises, Inc. v. State Bd. of Tax Appeals, 22 Kan. App. 2d 857, 864
(1996); Baily v. City of Topeka, 97 Kan. 327, 330 (1916).
Under the provisions of the agreement, Edison remains accountable to USD 259 for the performance of pupils attending the Edison schools and is required to provide information in a manner allowing the District to monitor the performance and efficiency of operation of the Edison schools. Articles 3.1; 10.2; Appendix B. The educational program provided by Edison is modeled on the "Partnership School Design" book and the "Student Standards for the Primary, Elementary and Junior Academies" book, both of which are incorporated by reference. Article 3.2. It appears Edison retains the authority to modify the design book and the student standards book, but must consult the Superintendent and the Board prior to "any substantial modification" of the books. Id. Special education services are to be provided in accordance with terms to which the Board has agreed. See Article 5.1; Appendix F. While Edison may subcontract the performance of any services specified in the agreement, such subcontracting is subject to approval by the Board. Article 6.1.
Pupils selected to attend Edison are required to meet criteria established jointly by the District and Edison, with the District retaining authority to grant preferential selection to some pupils. Articles 7.1; 7.2. Board procedures, rules, and regulations remain applicable to Edison schools unless Edison schools are specifically exempted by the Board from application of the procedures, rules, and regulations. See Article 9.1. The District, rather than Edison, issues diplomas to pupils who successfully complete the requirements for graduation. Article 9.3. Personnel of the Edison schools remain subject to District policies. Article 11.1. Certificated personnel are deemed employees of the District.
Article 11.3. Non-certificated personnel may be employees of either the District or Edison "as jointly determined by the District and Edison." Id. Personnel issues continue to be governed by the collective bargaining agreement entered into by the District. See Articles 11.1; 11.4; Appendix J. Edison schools remain subject to Federal, State, and local laws and applicable District regulations and policies. See Articles 5.1; 5.2; 6.2; 7.3; 7.5; 7.6; 7.7; 9.2; 9.3; 22.6. The District may terminate the agreement with or without cause. See Articles 12.2; 12.3.
While we can point to no one factor which delineates whether a unified school district "operates" a public school, we believe that a unified school district which authorizes an educational program for children residing within the school district, provides facilities in which the educational program is to be conducted, employs qualified personnel to carry out the educational program, and adopts rules, regulations, and policies to be followed in implementing the educational program operates the public school as required under Section 5 of Article 6 of the Kansas Constitution. The school district would be deemed to be operating the public school despite the fact the school district has entered into an agreement whereby a private entity tends to the performance of functions necessary for conducting the educational program. Therefore, USD 259 would be deemed to be operating those public schools designated as Wichita-Edison Partnership Schools in accordance with Section 5 of Article 6 of the Kansas Constitution when USD 259 has entered into an agreement whereby Edison would tend to the performance of functions necessary for conducting the District's educational program. Under these circumstances, the concept set forth in the agreement between USD 259 and Edison would not violate Section 5 of Article 6 of the Kansas Constitution.
In review, the State Board of Education is authorized pursuant to Section 2 of Article 6 of the Kansas Constitution to provide general supervision of public schools, educational institutions, and all the educational interests of the state, except educational functions delegated by law to the State Board of Regents. The term `general supervision' means something more than to advise and confer with, but something less than to control. Under the concept set forth in the agreement between USD 259 and Edison, the State Board would continue to be in a position in which the State Board would be able to provide general supervision of the schools operated on behalf of USD 259 by Edison. A unified school district would be deemed to be operating public schools within the school district in accordance with Section 5 of Article 6 of the Kansas Constitution when it has entered into an agreement whereby another entity would tend to the performance of functions necessary for conducting the school district's educational program. The concept set forth in the agreement between USD 259 and Edison would not violate Section 5 of Article 6 of the Kansas Constitution.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm